Bobby Wayne **BULLOCK**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–95–01490–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 19, 1998.

Brian D. Coyne, Houston, for Appellant.

John B. Holmes, Rikke Burke Graber, Houston, for Appellee.

Before Chief Justice SCHNEIDER and Justices ANDELL and TAFT.

## OPINION

MICHAEL H. SCHNEIDER, Chief Justice.

The jury found appellant, Bobby Wayne Bullock, guilty of possession with intent to deliver at least 400 grams of cocaine. The jury also found that appellant had exhibited or used a deadly weapon in the commission of the offense. Appellant pleaded true to two enhancement allegations, and the jury assessed punishment at 60 years in prison. We address: (1) the admissibility of a co-defendant's written statements that appellant claims violated his rights to confrontation and cross-examination because of their unreliability and lack of corroborating circumstances indicating trustworthiness; and (2) the sufficiency of the evidence to support the jury's finding that appellant used a deadly weapon where the charge instructed the jury to limit its consideration of extraneous offense evidence only to appellant's guilt or innocence. We affirm.

### Facts

On March 1, 1995, at around 8:30 p.m., Houston police found Mario Hurtado's corpse in a store parking lot.

On March 2, 1995, a Department of Public Safety trooper stopped a car for speeding. He arrested the passenger, Daniel Lindsey, pursuant to an outstanding warrant and obtained verbal consent to search the car. He found jewelry in the console that appeared to have blood on it. He also found two bundles of cocaine behind the back seat, and a few grams of cocaine in an overnight bag. Lindsey ultimately took responsibility for all of the cocaine.

On March 3, 1995, Lindsey gave a written statement that read, in part:

On 3-1-95, at approximately 8:30 p.m., I was at the residence of Johnny and Linda Morgan in Oklahoma City, Oklahoma. Bullock and I had made arrangements with Mario Hurtado to purchase ten kilos of Cocaine. Bullock called me on my mobile phone at Johnny's house and said that Mario was with Bullock and that everything was okay. Bullock then handed the phone to Mario. I talked to Mario, who told me that everything was just fine and that they would have the 10 kilos soon and that they would be shipping them to me. Everything went down hill from there.

Mario handed the telephone back to Bobby who told me that he would call me back in a little bit and that everything was fine and that he would call me later.

About 9:30 p.m., I received a second call from Bobby. Bobby said that the guy was there with the stuff in Bobby's Jeep. I was listening to Bobby talking to Mario. Mario says, "You have some money for me? " Bobby said, "Man, where's the rest?" Mario gave him some sh—about, "That's all there is." Then there was the sound of scuffling. Then I heard Mario say, "You die or me die, mother f——r, right now." That's what he said. I heard a bunch of scuffling and some noises like slapping and being hit. It kind of went still for a minute. Then I heard three shots. I heard the sound of doors flying open, and then I guess that's when Bobby hung up the phone. A few minutes later, Bobby called me back. Bobby said, "Dan, they got me." I said, "What the f——happened? Did they shoot you?" Bobby said, "I don't know." I asked him, "Didn't you have someone there with him?" He said, "No, I thought I could handle it myself. It wasn't supposed to happen like this." He started telling about everything that happened. He said that besides Mario, there were three Columbians [sic] in the Jeep with him. I asked him, "What the f— for?". Bobby said, "That's just the way it had to go down." He said that they had tried to get him, but that he got Mario instead. Bobby said that when he pulled the gun on them, they freaked and jumped him. He goes, "Man. I'm all f——ed up." Bobby said, "We scuffled, and Mario took my gun from me. My gun jammed on Mario. Mario hit me at least three times with the gun." After they stopped hitting me, they

tried to un-jam my gun. That's when Bobby said he reached down, got his second gun and then Bobby said, "I at least got Mario right between the eyes. I might have got one of the others also."

. . . .

I asked Bobby what he did with the body. He said he dumped it at some apartments. . . .

. . . .

I got my clothes together and Johnny Morgan and I left Oklahoma City in my car about 10 o'clock. I asked Johnny to drive me. . . .

. . . .

Bobby was asleep and was the only one there. I woke Bobby up and talked to Bobby. I asked him how he was. He showed me the cuts and stuff. He didn't want to talk much about it. That's when he told me there was only two kilos instead of ten. Bobby said that Mario had evidently intended on killing him. I told him that that's what it sounded like to me. During the time I was at Chuck's trailer talking to Bobby, I went over to Bobby's house to get him some clothes. While I was there I looked at his Jeep and saw that blood was everywhere, the windows, seat, dash, headliner.

Bobby told me that he was going to burn his clothes, his jeep, and that he was going to get rid of the pistol. Bobby asked me to take his jewelry to Oklahoma and keep it for him until he decided what to do with it. He told me to clean it up, because it probably still had blood on it. I told him that I would take it and keep it for him.

. . . .

Bobby gave me two kilos that he had. . . .

Johnny and I left. I fell asleep. Johnny later woke me up and said, "Oh, sh—. What did I do? We're being stopped".

Based upon information in Lindsey's statement, the San Jacinto County Sheriff's Department arrested appellant and confiscated a Jeep. Houston police Officer Jose Selvera later found blood on the floorboard and under the seat of the Jeep, as well as a bullet hole in the roof.

Appellant gave Selvera a written statement admitting he intended to meet with Hurtado on March 1, 1995, to purchase 10 kilograms of cocaine and work out a payment plan for the four kilograms that Johnny Morgan had stolen. He claimed he did not take any money with him because he was going to ask Hurtado to allow him to pay for the cocaine later. He said he and Hurtado drove appellant's Jeep to meet three Colombians, who gave Hurtado two kilograms of cocaine. When Hurtado learned appellant did not have $160,000 for the 10 kilograms he promised to buy, he pulled a gun. Appellant pulled a gun, as well, but Hurtado knocked it out of his hand. As they struggled, Hurtado's gun fired into the back seat and then jammed. Hurtado lay on top of appellant, trying to un-jam the gun. Appellant found his gun, fired three times from a prone position, believing he had hit Hurtado in the face. He drove the Jeep away and dumped Hurtado's body. Appellant said he then called Lindsey, who was in Oklahoma. The next morning Lindsey arrived and appellant gave him the cocaine and jewelry.

Lindsey pleaded guilty to the possession charge on August 7, 1995, received a 10–year prison sentence, and did not file a notice of appeal. On August 18, 1995, Lindsey gave an additional statement that said appellant gave him two kilograms of cocaine. Lindsey also stated that appellant told him he got the cocaine from Hurtado on March 1, 1995. Lindsey said he took the two kilograms on March 2, 1995, in Shepherd, Texas, and was returning to Oklahoma when Trooper Turner pulled him over.

At appellant's trial, the judge held a hearing outside the presence of the jury and determined Lindsey had no Fifth Amendment right to refuse to testify. Nevertheless, Lindsey refused to testify, and the judge held him in contempt. The court allowed the State to introduce Lindsey's statements into evidence over appellant's objection.

Before accepting appellant's plea, the court informed him that he could appeal only the motion to suppress without the court's permission. Appellant stated that he under-

stood the court's explanation of his appellate remedies and proceeded with his plea.

### Admissibility of Lindsey's Statements

■ In his first four points of error, appellant claims the court erred by admitting Lindsey's written statements into evidence. Appellant presents two challenges: (1) violation of the right to confront and cross-examine the declarant because of the unreliability of the statements; and (2) error in admitting statements against penal interest that were not corroborated by circumstances indicating trustworthiness.[1]

### A. Violation of Confrontation and Cross-examination

■ Admission of a hearsay statement does not violate the confrontation clause where the declarant is unavailable for trial cross-examination and the statement bears adequate indicia of reliability. *Ohio v. Roberts,* 448 U.S. 56, 68, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Appellant concedes Lindsey was unavailable, but contests reliability.

■ We can usually presume reliability when the declarant's statement falls under a traditional hearsay rule exception. *See id.* 448 U.S. at 68, 100 S.Ct. at 2539. However, a statement against the declarant's penal interest is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. TEX.R.CRIM. EVID. 803(24). A co-defendant's statement against penal interest is presumed unreliable, however, to the extent it inculpates a defendant. *See Lee v. Illinois,* 476 U.S. 530, 546, 106 S.Ct. 2056, 2065, 90 L.Ed.2d 514 (1986). The rationale for this proposition is the obvious motive of an accomplice to shift some or all of the blame away from himself. *See id.* 476 U.S. at 545, 106 S.Ct. at 2064.

■ Appellant acknowledges that reliability is shown when a defendant's own state-

ment confirms the essential facts of a co-defendant's statement. *See Cruz v. New York,* 481 U.S. 186, 192–93, 107 S.Ct. 1714, 1718–19, 95 L.Ed.2d 162 (1987). Appellant claims there are discrepancies between appellant's confession and Lindsey's statements because: (1) Lindsey stated he and appellant had been engaged in distributing cocaine since February 1994, but appellant made no such admission; and (2) Lindsey's statements leave doubt whether appellant shot Hurtado in self-defense, while appellant clearly stated Hurtado had tried to kill him.

The State argues that appellant's and Lindsey's statements give virtually identical accounts of the facts of the offense: (1) they had an arrangement to buy 10 kilograms of cocaine from Hurtado; (2) only two kilograms were actually delivered; (3) the deal went bad; (4) a struggle ensued; (5) appellant shot Hurtado and dumped his body in another location; and (6) appellant gave Lindsey the two kilograms of cocaine he received from Hurtado. The State contends this is suffcient corroboration by itself. Nevertheless, the State points out other facts supporting the trustworthiness of Lindsey's statements: (1) blood inside, and a bullet hole in the roof, of appellant's Jeep corroborated Lindsey's statement that Hurtado was shot there; (2) Hurtado's body was found under circumstances indicating it had been dumped at that location, as Lindsey's statement said; (3) at the time of appellant's arrest, he had scratches on his body, corroborating Lindsey's statement appellant had been in a scuffle; and (4) the weight of the bundles of cocaine discovered in appellant's vehicle was 1.93 kilograms, corroborating Lindsey's statement he received two kilograms of cocaine from appellant the same morning.

We conclude that appellant's alleged "discrepancies" do not undermine the abundant corroboration from appellant's own confession and independent circumstantial evi-

---

1. Nowhere at trial, or on appeal, has appellant argued inadmissibility of the statements against penal interest because they contained statements inculpating appellant rather than only the declarant. Appellant did not preserve at trial, nor argue on appeal, the error which the dissenting opinion addresses. Furthermore, the dissenting opinion acknowledges that Lindsey's statements were only partially inadmissible. Under these circumstances, the burden is on the objecting party to specify the objectionable portions. *See Wintters v. State,* 616 S.W.2d 197, 202 (Tex.Crim. App.1981). Appellant did not do so.

dence. Lindsey's statements were shown to be sufficiently reliable.

### B. Uncorroborated and Untrustworthy

Appellant's only argument that Lindsey's statements should have been excluded by the hearsay rule is that the statements were insufficiently corroborated by circumstances that indicate the statements' trustworthiness. We have already concluded to the contrary.

Accordingly, we overrule appellant's first four points of error.

### Sufficiency of the Evidence

Appellant's fifth point of error challenges the sufficiency of the evidence supporting the jury's finding that a deadly weapon was used or exhibited where the court's charge restricted to appellant's guilt or innocence of the alleged offense the jury's consideration of any evidence regarding a weapon.

Appellant's argument is based on a line of cases holding that sufficiency of the evidence must be judged by the jury charge. *See Benson v. State*, 661 S.W.2d 708 (Tex.Crim. App.1982). The *Benson* line of cases was overruled in *Malik v. State*, 953 S.W.2d 234, 239 (Tex.Crim.App.1997).

Accordingly, we overrule appellant's fifth point of error because its basis has been abolished.

### Conclusion

We affirm the judgment of the trial court.

Justice ANDELL dissents and Justice TAFT concurs.

ANDELL, Justice, dissenting.

I agree with the majority opinion that appellant did not object at trial, or argue on appeal, that Lindsey's statements inculpating appellant did not qualify as statements against interest because they were not against Lindsey's penal interest. Nevertheless, appellant did argue that Lindsey's statements were not reliable. I would hold that unreliability is the foundation for the whole line of cases establishing that statements of co-defendants are inadmissible as to those portions inculpating a defendant. According-

ly, appellant adequately preserved error that I would hold is reversible. I respectfully dissent from the majority's opinion apparently holding appellant waived his error by not more specifically articulating the manner in which Lindsey's statements regarding appellant were unreliable.

### Statement Against Penal Interest

We can usually presume reliability where the declarant's statement falls under a traditional hearsay rule exception. *See Ohio v. Roberts*, 448 U.S. 56, 68, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). However, a statement against the declarant's penal interest is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. TEX.R.CRIM. EVID. 803(24). Rule 803(24) does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. *Miles v. State*, 918 S.W.2d 511, 515 (Tex.Crim.App.1996) (quoting *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 2435, 129 L.Ed.2d 476 (1994)); *Cofield v. State*, 891 S.W.2d 952, 956 (Tex.Crim.App.1994).

The fact that a person is making a broadly self-inculpatory confession does not make the confession's non-self-inculpatory parts more credible. *Williamson*, 114 S.Ct. at 2435. However, the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than mere attempts to shift blame or curry favor with the authorities. *See id.* at 2436. Whether a statement is self-inculpatory can only be determined by viewing it in context. *Lee v. Illinois*, 476 U.S. 530, 545, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514 (1986). A defendant's confession is presumptively unreliable as to those portions which detail a co-defendant's conduct or culpability because those portions may be the result of the defendant's desire to shift the blame, curry favor, avenge himself, or divert attention to another. *Lee*, 476 U.S. at 545, 106 S.Ct. at 2064; *Cofield*, 891 S.W.2d at 956. A co-defendant's statements about what the defendant did or said are less credible than ordinary hearsay evidence. *Lee*, 476 U.S. at 541, 106 S.Ct. at 2062. Furthermore, a co-defendant's confession is not nec-

essarily made reliable in its entirety simply because some of the facts it contains "interlock" with the facts in the defendant's statement. *Lee,* 476 U.S. at 545, 106 S.Ct. at 2064. The true danger inherent in such hearsay is its selective reliability. *Id.*

I cannot conclude that all of what Lindsey said was properly admitted. *See Williamson,* 114 S.Ct. at 2437. Lindsey's statement is reliable only to the extent that he admitted knowingly possessing cocaine. *See id.* But other aspects of his confession, especially the portions implicating appellant as his source and detailing appellant's struggle with Hurtado, did little to subject Lindsey to criminal liability. *See id.* In fact, he may have been trying to curry favor with the police and district attorney to earn a lighter sentence and avoid other charges.

I would find the court erred by admitting both of Lindsey's statements in their entirety. The non-self-exculpatory portions do not fall within the statements against interest exception and, as such, do not bear adequate safeguards of reliability.

### Harm

The error in this case involves the denial of appellant's constitutional rights to confrontation and cross-examination. Therefore, unless it can be determined beyond a reasonable doubt that the error did not contribute to the conviction or to the punishment, we must reverse the judgment. TEX.R.APP. P. 44.2(a).

Had Lindsey's statements properly been excluded, the only evidence that appellant possessed cocaine would have been his own extra-judicial confession. A criminal defendant's conviction may not be based solely on that defendant's extra-judicial confession, and if such confession is obtained, there must be some independent evidence of the corpus delicti of the crime. *Brady v. State,* 32 Tex. Crim. 264, 22 S.W. 924, 925 (1893).

Had the court excluded Lindsey's statement, the only evidence linking appellant to cocaine possession would have been his own extra-judicial confession. Such evidence would have been legally insufficient to support a verdict. Therefore, I would find the erroneous admission of the statements harmful by allowing conviction where the evidence was otherwise legally insufficient.

I would sustain appellant's first four points of error, and reverse and remand for a new trial.

TAFT, Justice, concurring.

I agree with the majority opinion. I write because there is a reason, yet unaddressed, why the basis for the dissenting opinion should be reconsidered.

### Statements Against Penal Interest

We recently addressed the issue of admissibility of a non-testifying co-defendant's confession as a declaration against penal interest in *Zarychta v. State,* 961 S.W.2d 455 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). We observed that the Court of Criminal Appeals has adopted the United States Supreme Court's view of the federal counterpart to rule 803(24) based on the respective rules containing very similar language. *Zarychta,* 961 S.W.2d at 458 (citing *Cofield v. State,* 891 S.W.2d 952, 956 (Tex.Crim.App. 1994)). Unnoticed in *Cofield* and its progeny, including *Zarychta,* are the differences in language between the federal and state rules of evidence concerning statements against penal interest.

The federal counterpart is located within rule 804 of the Federal Rules of Evidence, which concerns hearsay objections where declarant is unavailable:

> (3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

FED. RULE EVID. 804(b)(3). The Texas version is found in rule 803 of the Texas Rules of Criminal Evidence dealing with hearsay exceptions applicable regardless of the availability of the declarant:

> **(24) Statement Against Interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, or to make him an object or hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

TEX.R.CRIM. EVID. 803(24).

The differences between the federal and Texas versions are: (1) the federal version requires the declarant to be unavailable, while Texas does not; (2) Texas includes statements that would make one an object or hatred, ridicule, or disgrace, while the federal version does not; and (3) Texas requires all statements against penal interest to be corroborated by circumstances clearly indicating trustworthiness, while the federal version requires only statements offered to exculpate the accused to be corroborated. The significance of these differences upon the issue here is that the federal version does not require corroboration of an unavailable co-defendant's statement against penal interest when offered by the government to inculpate the defendant. It is possible that this lack of a corroboration requirement motivated the United States Supreme Court to strictly construe statements against penal interest as not including statements inculpating others in *Williamson v. United States,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

Furthermore, there is a line of Texas cases upholding the admission of statements against penal interest made by co-defendants. *See McFarland v. State,* 845 S.W.2d 824, 835–37 (Tex.Crim.App.1992); *Tidrow v. State,* 916 S.W.2d 623, 626–29 (Tex.App.— Fort Worth 1996, no pet.). Although the concurring opinion in *Miles v.* State, 918 S.W.2d 511, 518 n. 2 (Tex.Crim.App.1996) (Baird, J., concurring), urged that *McFarland* should be overruled, the Court of Criminal Appeals has not done so.

I would hold that we are not bound by the interpretation of the federal rule by the United States Supreme Court, based on the substantial differences in the respective evidentiary rules regarding statements against penal interest. Indeed, the approach of the United States Supreme Court in *Williamson* was to evaluate each statement within a confession as a separate statement for purposes of admissibility under the federal hearsay exception. *Id.* at 2434–35 This is antithetical to the general approach Texas has taken in evaluating admissibility of statements. *See, e.g., Marini v. State,* 593 S.W.2d 709, 713 (Tex.Crim.App.1980) (holding that later declarations during defendant's confession leading officers to evidence of the crime constituted part of one continuous confession that began at the police station). The federal interpretation would lead to the practice of examining every sentence or independent clause for self-inculpation *and* corroboration to be admissible under the hearsay exception for statements against penal interest.

I would follow *McFarland* until expressly overruled by the Court of Criminal Appeals. Had appellant preserved the issue, I would hold Lindsey's statements admissible because they inculpated Lindsey and they are clearly trustworthy. As in *Tidrow,* Lindsey's statements are corroborated by appellant's own confession. *Tidrow,* 916 S.W.2d at 628. They are also corroborated by physical evidence, as in *McFarland. McFarland,* 845 S.W.2d at 836. This is not a case where the declarant sought to direct the blame at appellant in order to escape responsibility for his actions. To the contrary, Lindsey admitted his guilt for the charged offense and merely implicated appellant as a party.

Therefore, I urge the Court of Criminal Appeals to revisit this issue.