NUMBER 13-99-079-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


TOMAS TORRES , Appellant,


v.


THE STATE OF TEXAS , Appellee.

___________________________________________________________________

On appeal from the 105th District Court

of Nueces County, Texas.

__________________________________________________________________


OPINION ON REMAND

Before Justices Dorsey, Hinojosa, and Rodriguez

Opinion by Justice Rodriguez

This case is on remand from the Texas Court of Criminal Appeals. On original submission, we affirmed appellant's
conviction for murder and engaging in organized criminal activity. Torres v. State, No. 13-99-079-CR (Tex. App.-Corpus
Christi, February 3, 2000) (not designated for publication). Appellant presented a single point of error: that he was denied
his right to confrontation under the Sixth Amendment by the admission of hearsay statements implicating him in murder. 
We concluded appellant waived any error, and alternatively, based on the admission of the same or similar evidence, any
error was harmless. The court of criminal appeals reversed, holding that appellant had preserved error, and that the
testimony relied upon in the harm analysis was not the same or similar to the complained of hearsay statements. Torres v.
State, No. 0707-00 (Tex. Crim. App., June 6, 2001) (not designated for publication). Accordingly, the court reversed and
remanded to this Court for further consideration of the point of error consistent with its opinion. We reverse and remand.

The facts of this case are set forth in our original opinion. Briefly, appellant was indicted and convicted of, inter alia, the
murder of Armando Munoz. According to evidence presented at trial, appellant, who was a member of a gang, was ordered
to kill Munoz by a high ranking member of the gang. Leandro Estrada, also a member of the gang, volunteered to assist
him. The State alleged appellant, Estrada, and another gang member killed Munoz by pulling alongside him in an
automobile and shooting him. Munoz was discovered dead in an automobile, with multiple gunshot wounds to the head,
chest, and abdomen. 

Appellant complains of testimony of a fellow gang member, Rudy Contreras, in which he related a conversation he had
with Leandro Estrada. Contreras testified as follows:

Prosecutor: And how did the conversation arise or how did you get to talking about Mandy Munoz?

Contreras: Cause he started being jumpy and I was like - I told him, "What's wrong? What are you on or what?" He said,
"Nothing." He goes, "You just get jumpy after you kill somebody." And I asked him, "What do you mean?" And that's
when he started explaining to me what him and Chato (1) had done?

Prosecutor: Okay. What did he tell you regarding the death of Mandy Munoz?

Contreras: He had told me that, "Remember the last meeting when they picked Chato and me? And I said, "Yes." He goes,
"Well, we staked him out all night until the next morning, and we saw him get in the car and he pulled out. When he pulled
out, we sped up next to him and we open-fired on him." And he goes - he goes, "Man, we got next to him, he looked right
at us and, you know, we shot him." And then he told me they stashed the guns and left.

Prosecutor: Did he say that both - did Leandro Estrada say that both himself and Tomas Torres fired weapons at Mandy Munoz?

Contreras: Yes.

Prosecutor: And did he tell you what kind of weapons were used during this shooting?

Contreras: He told me he had a Tech 9 and Chato had a gun also.

Appellant also complains of the admission of Estrada's written confession implicating himself and appellant in the murder. 
In his written statement, Estrada claimed he and appellant went to Munoz's house on the day of the murder. Estrada had a
380 pistol and appellant had a S.K.S. rifle. They drove up next to Munoz's car and appellant started shooting at Munoz. 
Appellant told Estrada to shoot and he did so about three times. Appellant shot a lot of rounds; he unloaded the rifle. 

Appellant raised several objections to Contreras's testimony and Estrada's written confession, asserting they constituted
inadmissible hearsay. The State responded that they were admissible as statements against penal interest. See Tex. R.
Evid. 803(24); Cofield v. State, 891 S.W.2d 952, 955-56 (Tex. Crim. App. 1994). The trial court overruled the objections. 
Estrada did not testify at trial. 

Appellant asserts that the admission of these statements violated his rights under the Confrontation Clause of the Sixth
Amendment, and article I, section 10 of the Texas Constitution.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee an accused in a criminal prosecution the
right "to be confronted with the witnesses against him." U.S. Const. amend. VI; Pointer v. Texas, 380 U.S. 400 (1965). 
"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by
subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497
U.S. 836, 845 (1990). Encompassed within the right to confront witnesses is the opportunity of cross-examination and the
right of physical confrontation. See Long v. State, 742 S.W.2d 302, 306 (Tex. Crim. App. 1987); Muttoni v. State, 25
S.W.3d 300, 304 (Tex. App.-Austin 2000, no pet.). These functions are "indelibly linked to the practice of excluding from
evidence hearsay statements." Long, 742 S.W.2d at 305. 

Hearsay is an out-of court statement, written or oral, offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). 
The admission of hearsay evidence amounts to a violation of the Confrontation Clause of the Sixth Amendment unless (1)
"the evidence falls within a firmly rooted hearsay exception[,]" or (2) it contains "particularized guarantees of
trustworthiness" so that adversarial testing would be expected to add little to its reliability. Ohio v. Roberts, 448 U.S. 56,
66 (1980); see Idaho v. Wright, 497 U.S. 805, 817 (1990).

The court of criminal appeals has held that the statement against penal interest exception falls within a firmly rooted
hearsay exception. See Guidry v. State, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999);Dewberry v. State, 4 S.W.3d 735, 753
(Tex. Crim. App. 1999). In both cases, the court reviewed, inter alia, Sixth Amendment Confrontation Clause challenges
to the admission of hearsay testimony from a co-defendant declarant which inculpated both the declarant and the defendant. 

Appellant contends that Lilly v. Virginia, 527 U.S. 116 (1999), in which a plurality of the supreme court held "accomplices'
confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept
has been defined in our Confrontation Clause jurisprudence[,]" controls over the court of criminal appeals' holding in
Guidry and Dewberry. (2) Lilly, 527 U.S. at 134; see State v. Guzman, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998) (court
of criminal appeals recognizes "that where one of [its] decisions on a federal constitutional issue directly conflicts with a
United States Supreme Court holding, [it] is bound to overrule [its] decision"). As the State observes, however, the
Supreme Court has explained that "[w]hen a fragmented Court decides a case and no single rationale explaining the result
enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who
concurred in the judgment on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977); see Nichols v.
United States, 511 U.S. 738 (1994); Note, The Precedential Value of Supreme Court Plurality Decisions, 80 Colum. L.
Rev. 756, 761 (1980). 

In Lilly, Justice Rehnquist, joined by Justice O'Connor and Justice Kennedy, appears to have concurred in the judgment on
the narrowest grounds. See Lilly, 527 U.S. at 144 (Rehnquist, C.J., concurring). Rehnquist opined that the majority's
holding would result in an overbroad "ban on the government's use of accomplice confessions that inculpate a
codefendant[,]" and that there was no reason to characterize statements that equally inculpate both the declarant and the
defendant as not falling within a firmly rooted hearsay exception. Id. at 145, 147. Because the portion of the declarant's
confession that was against his penal interest was separate in time and place from statements incriminating the defendant,
Rehnquist concluded the confession did not fall under the statement against penal interest exception. Id. at 146. Therefore,
the question of "whether the Confrontation Clause permits the admission of a genuinely self-inculpatory statement that also
inculpates a codefendant" was not raised. Id. Thus, under the narrowest grounds test, the plurality's holding that
accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule is
not binding precedent. 

In any case, we conclude that Estrada's written confession does not constitute a declaration against penal interest under the
rules of evidence. Texas recognizes an exception to the hearsay rule for a statement against a declarant's penal interest;
however, the court of criminal appeals has held there is no such exception for a declarant's statement against someone else's
interest, such as an accomplice. See Miles v. State, 918 S.W.2d 511, 515 (Tex. Crim. App. 1996); Cofield v. State, 891
S.W.2d 952, 955 (Tex. Crim. App. 1994). Moreover, the statement against penal interest exception "does not allow
admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally
self-inculpatory." Miles, 918 S.W.2d at 515 (quoting Williamson v. United States, 512 U.S. 594, 600-01 (1994)). 
However, a statement against a third party's interest may fall under the exception if it "is also sufficiently against the
declarant's interest as to be reliable." Guidry v. State, 9 S.W.3d 133, 149 (Tex. Crim. App. 1999), cert. denied, 531 U.S.
837 (2000). 

In both Cofield and Miles, the court of criminal appeals relied upon the United States Supreme Court's interpretation of the
federal counterpart to rule 803(24) in Williamson, 512 U.S. at 600-01. See Miles, 918 S.W.2d at 515; Cofield, 891 S.W.2d
at 956. In Williamson the Supreme Court explained that "[t]he fact that a person is making a broadly self-inculpatory
confession does not make more credible the confession's non-self-inculpatory parts." Williamson, 512 U.S. at 599. Indeed,
"[o]ne of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive
because of its self-inculpatory nature." Id. at 599-60. The Court concluded, however, that "[e]ven the confessions of
arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempt[ing] to shift blame or
curry favor." Id. at 600.

In this case, the trial court admitted Estrada's written confession in which he claimed appellant started shooting at Munoz
and then told him to shoot. Estrada admitted to shooting about three times, but stated that appellant shot a lot of rounds and
emptied his rifle. These statements tend to shift the blame to appellant more than they inculpate Estrada. See Zarychta v.
State, 961 S.W.2d 455, 487-59 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd) (confession in which accomplice admitted
shooting victim was not against his penal interest when he stated the appellant told him to do so). We cannot say Estrada's
written confession is sufficiently against the declarant's interest as to be reliable. As such, the confession does not fall
under the statement against penal interest exception and cannot be said to fall within a firmly rooted hearsay exception for
purposes of the Confrontation Clause. 

Estrada's verbal statements as related by Contreras, on the other hand, equally inculpate both Estrada and appellant. We
conclude that the admission of this testimony was not a violation of appellant's rights under the Confrontation Clause. The
admission of Estrada's written confession, therefore, constitutes a violation of the Confrontation Clause unless it contains
"particularized guarantees of trustworthiness." 

 A non-testifying co-defendant's confession implicating the defendant as the perpetrator of the crime charged is
presumptively unreliable due to the unavailability of cross-examination. See Lilly, 527 U.S. at 131-32, 137; Lee v. Illinois,
476 U.S. 530, 541 (1986). The reliability of the evidence must be evaluated in light of the totality of the circumstances,
considering "only those [circumstances] that surround the making of the statement and that render the declarant particularly
worthy of belief." Guidry, 9 S.W.3d at 150 (quoting Wright, 497 U.S. at 819). "Hearsay evidence used to convict a
defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at
trial." Wright, 497 U.S. at 822; see Lilly, 527 U.S. at 138. The presumption of unreliability may be rebutted if there is
"sufficient indicia of reliability" flowing from the circumstances surrounding the confession. Lee, 476 U.S. at 543-544;
Roberts, 448 U.S. at 65; Chavez v. State, 6 S.W.3d 56, 62 (Tex. App.--San Antonio 1999, pet. ref'd). 

Here, Estrada's statement was taken by Richard Garcia, a police officer for the City of Corpus Christi. Estrada was under
arrest for murder when he gave the statement. Estrada was advised of his rights in writing, and waived his rights. Garcia
and Estrada talked for a while, some of the conversation was question and answer, some was Estrada telling Garcia what
happened. The statement was then typed, Estrada was again read his rights, and signed the statement. Estrada was advised
he was accused of murder.

As indicated, Estrada's written statements tended to shift the blame to appellant more than they inculpated himself. Estrada
claimed appellant told him to shoot Munoz. When he gave the statement, Estrada was in the custody of law enforcement
officials and was aware that he was accused of murder. There is no indication that Estrada was subject to any
cross-examination when he gave his statement.

The State asserts Estrada's statement is reliable because Estrada and appellant participated in concert in the murder. See
Holiday v. State, 14 S.W.3d 784, 786-87 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd) (declarant's statement was
trustworthy where declarant placed blame for murder on himself and merely indicated that the defendant was also present at
the scene of the murder). Estrada's statement, however, did more than place appellant together with Estrada at the scene of
the crime. According to his statement, appellant told him to shoot. Estrada only shot a few times, whereas appellant shot a
lot of rounds. 

The State also argues that Estrada's written statement was corroborated by Contreras testimony as to what Estrada told him
regarding the murder. As the State notes, a statement against one's penal interest, made outside a courtroom, and uttered
freely and spontaneously to a friend may show guarantees of credibility and reliability. See Dewberry, 4 S.W.3d at 753. In
considering the inherent trustworthiness of Estrada's written confession, however, we must look solely to the confession
and the circumstances in which the confession was given rather than independent evidence tending to corroborate the
confession. See Guidry, 9 S.W.3d at 150. Furthermore, Estrada's verbal statements do not corroborate the portions of his
written confession that tend to shift blame to appellant. 

The State further asserts that Estrada's statement is corroborated by independent evidence. Again, the statement "must
possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." Idaho, 497
U.S. at 822. We are unable to conclude that Estrada's written statement contains particularized guarantees of
trustworthiness. We conclude the presumption of unreliability has not been rebutted with respect to Estrada's written
confession. Consequently, the admission of Estrada's written confession violated appellant's rights under the Confrontation
Clause.

We must still determine whether the admission of Estrada's written confession caused appellant harm. See Chapman v.
California, 386 U.S. 18, 21-23 (1967); see also Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (holding that "the
constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation errors,
is subject to Chapman harmless-error analysis"). (3) "Before a federal constitutional error can be held harmless, the court
must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman, 386 U.S. at 24; Tex. R. App.
P. 44.2(a). If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error was
not harmless beyond a reasonable doubt. Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). The court of
criminal appeals recently explained the proper analysis of constitutional errors as follows:

An appellate court should not focus on the propriety of the outcome of the trial. Garcia v. State, 919 S.W.2d 370, 380
(Tex. Crim. App. 1994). Instead, the appellate court should calculate as much as possible the probable impact of the error
on the jury in light of the existence of other evidence. Miles v. State, 918 S.W.2d 511, 517 (Tex. Crim. App. 1996)
(plurality opinion); Harris v. State, 790 S.W.2d 568, 586-87 (Tex. Crim. App. 1989). While the most significant concern
must be the error and its effects, the presence of overwhelming evidence supporting the finding in question can be a factor
in the evaluation of harmless error. Moreno v. State, 858 S.W.2d 453, 466 (Tex. Crim. App. 1993), cert. denied, 510 U.S.
966, 114 S.Ct. 445, 126 L.Ed.2d 378 (1994). If an appellate court rules that an error is harmless, it is in essence asserting
that the nature of the error is such that it could not have affected the jury. Miles v. State, 918 S.W.2d at 517; Harris v.
State, 790 S.W.2d at 586-87. Stated in an interrogatory context, a reviewing court asks if there was a reasonable
possibility that the error, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion as to
the issue in question. Jones v. State, 833 S.W.2d 118, 127 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 921, 113 S.Ct.
1285, 122 L.Ed.2d 678 (1993).

Id. 

In this case, the evidence adduced at trial tying appellant to the murder of Munoz was largely circumstantial. Two gang
members testified appellant told them he had shot Munoz. Contreras testified appellant was ordered to kill Munoz. 
Estrada's written statement was not the only eye-witness account of the murder. In Estrada's oral statement to Contreras,
the admission of which we have concluded did not violate the Confrontation Clause, Estrada claimed he and appellant shot
and murdered Munoz. Estrada's written statement, however, did provide the only evidence that appellant shot first, that he
told Estrada to shoot, and that he shot a lot of rounds at Munoz. Though the State was not required to prove that appellant
told Munoz to shoot or that he fired more rounds than Estrada, this evidence could have been prejudicial in the jury's
determination of a verdict. Moreover, the State emphasized Estrada's written confession during closing arguments, stating:

You'll notice when Leandro Estrada gave his written statement, he says no promises were made, nothing was given to him
in return for that statement. There's no deal for the shooter, no deal with Leandro Estrada. He gave that statement right at
the time the police talked to him without any type of deal in place. 

Though there is substantial evidence supporting appellant's conviction, we are unable to conclude the error was harmless
beyond a reasonable doubt. Appellant's sole point of error is sustained.

The judgment of trial court is REVERSED AND REMANDED. 



NELDA V. RODRIGUEZ

Justice



Do not publish .

Tex. R. App. P. 47.3.



Opinion on Remand delivered and 

filed this 31st day of August, 2001.

1. Contreras testified, "[w]hen I speak of Chato, I speak of Tomas Torres." 

2. We are at a loss to explain the court of criminal appeals' failure to mention Lilly v. Virginia, 527 U.S. 116 (1999) in
either Guidry or Dewberry, cases decided four and six months, respectively, after the Supreme Court handed down Lilly. 

 

3. We decline to apply the Van Arsdall harm analysis to this case. See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). 
Van Arsdall concerned a trial court's refusal to allow a defendant the opportunity to cross-examine a witness for bias. See
id. at 676. The Supreme Court held that that "the constitutionally improper denial of a defendant's opportunity to impeach
a witness for bias, like other Confrontation errors, is subject to Chapman harmless-error analysis." Id. at 684. 



There is no indication in Van Arsdall that the articulated test was intended to apply to all violations of the Confrontation
Clause. Instead, the Court explained that generally, Confrontation Clause errors are subject to the Chapman harmless error
analysis. Id. Only then did the Court craft a specific harm analysis for instances in which the defendant is denied the
opportunity to elicit bias evidence on cross-examination. Id. 



Furthermore, the Van Arsdall test is largely unworkable in the context of a hearsay error. For example, the test initially
requires that the reviewing Court assume "that the damaging potential of the cross-examination were fully realized." Id. In
this case, appellant did not attempt to elicit evidence damaging to the prosecution's case on cross-examination; rather, he
simply objected to the admission of inadmissible hearsay. As a result, the presumption called for in Van Arsdall would
have no application to the facts of this case.