**Jeremy Wade RICKETTS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–01–151–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 30, 2002.

Rehearing Overruled Nov. 27, 2002.

Earl E. Bates, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles Mallin, Chief, Appellate Division, Edward L. Wilkinson, Kevin Rousseau and Lisa Callaghan, Assistant District Attorneys of Tarrant County, for Appellee.

Panel B: DAY, LIVINGSTON, and GARDNER, JJ.

## OPINION ON PETITION FOR DISCRETIONARY REVIEW

ANNE GARDNER, Justice.

### I. INTRODUCTION

Appellant Jeremy Wade Ricketts appeals his murder conviction. On August 1, 2002 we issued an opinion and judgment affirming the judgment and conviction in this appeal. Appellant has filed a petition for discretionary review in the court of criminal appeals. Pursuant to Texas Rules of Appellate Procedure 50, we withdraw our opinion and judgment and substitute the following modified opinion and accompanying judgment again affirming the judgment of the trial court.

### II. FACTUAL AND PROCEDURAL BACKGROUND

A unanimous jury found Appellant guilty of murder and assessed punishment at fifty years' confinement. In four points, Appellant contends the trial court erred by overruling his motions for continuance and mistrial; by dismissing a juror as emotionally disabled and continuing to trial with eleven jurors; by overruling Appellant's objections to a co-defendant's excited utterances; and by sustaining the State's objection to the testimony of two punishment witnesses that attempted to testify as to their opinion of Appellant's guilt.

On or about the early morning hours of August 10, 1999, the body of William Martin Klozik ("Marty") was discovered by Gerard Barwinkel, a courier at a twenty-four hour delivery service, in a field at Loop 820 and Trinity Boulevard in Fort Worth, Texas. Marty had died a few hours earlier as a result of a gunshot to

the back of his head. Four days after his death, Marty's sister, Tammie Fleming, and her family visited the death scene after Marty's funeral and found a small shaving kit bag containing methamphetamine. Tammie called the police and informed them of her discovery. The police linked the bag and methamphetamine to Jason Truver.

Jason Truver, Shad Hocutt, and Appellant were friends. The night of Marty's death, Jason's fiancé, Jacqualine Smalley, was at home with Jason when Marty came to visit. While Jacqualine was bathing, Jason knocked on the bathroom door and told her Marty had stolen his bag of methamphetamine. Jason called Appellant at his house, told him about the situation, and left his apartment with Jacqualine. When Jason and Jacqualine arrived at Appellant's home, Jason met outside with Appellant and Shad, who was already at Appellant's home, while Jacqualine went into the house and stayed with Appellant's girlfriend, Shanon Slape.

While outside discussing what they should do about the situation, Jason, Shad, and Appellant decided to go to the store and purchase beer. In route to the store, Marty called Appellant on his mobile phone and the two agreed to meet to exchange the methamphetamine for $2,500. There is conflicting testimony as to whether Jason was going to buy back the methamphetamine. Jacqualine testified Jason was going to purchase the drugs from Marty for $2,500. Shad testified that he and Appellant were going with Jason to get the drugs back and beat up Marty if necessary.

Jason, Shad, and Appellant arrived at the meeting place early. When they arrived, Jason let Shad and Appellant out of the car and told them to hide. Jason drove away and returned to the meeting place at the same time as Marty. When Marty arrived, he got out of his car and went to his car's trunk. Appellant walked out of the darkness and called Marty's name. Marty ran away from his car and was tackled by Shad in a nearby ditch. Shad, realizing Marty did not have a gun, got up and heard someone yelling for him "to move, to look out." Shad ran towards Jason's car and heard a gunshot, and as he reached Jason's car, he heard another gunshot. Jason and Appellant returned to Jason's car and drove to Appellant's home. During the ride back to Appellant's home, Jason asked Appellant if Marty was "getting back up," Appellant replied, "No, I don't think so."

## III. DISCUSSION

### A. Facts Relevant to Points One and Two

On Wednesday April 4, 2001, the first day of trial, a juror called the trial court from Tyler, Texas, saying her father had died. The juror informed the judge that "it would cause [her] great mental distress to miss her father's funeral." The juror stated that she could concentrate after Monday, even though she would be exhausted after coming back from Tyler late on Sunday. The trial judge decided to have a hearing on whether to continue the trial on Monday or dismiss the juror as emotionally disabled and proceed to trial with eleven jurors.

In determining whether to continue the trial on Monday, the record reflects that the trial court considered that one juror was a physician whose partner was having surgery and was required to be back at work the following week to run his office. Another juror did payroll at her office and had to be back to work on Tuesday, or "nobody gets paid." Another juror had her mother in town to watch her children and would have no childcare the next week. The record also reveals that the

trial court's docket was going to be busy for the next two weeks. Finally, the trial court noted that the defendant had been incarcerated for one-and-one-half years. Based on the above facts, the trial court concluded it was "inappropriate to postpone the case further." The trial court found the juror emotionally disabled and decided to proceed to trial with eleven jurors.

Defense counsel objected to the trial court's decision to proceed, contending the relevant juror fit defense counsel's juror profile and her absence would change "our strategy somewhat." Further, defense counsel argued the jurors' economic reasons should not take priority over the Defendant's due process and effective assistance of counsel rights. Defense counsel then asked the court to "reconsider and start the trial Monday, talking about three days." After defense counsel was overruled, he asked for a mistrial on due process and effective assistance of counsel grounds. The trial court overruled his motion for mistrial.

**B. Motion for Continuance**

Appellant's first point contends that the trial court erred by denying his motion for continuance based on the trial court's dismissal of a juror. Appellant argues that, because he had no knowledge of the absent juror until the day of trial, he was surprised and his due process rights suffered as a result. The State responds that Appellant's use of an unsworn, oral motion for continuance waived error. Appellant contends that we should follow *O'Rarden v. State* and allow an oral motion for continuance based on equitable principles to preserve error. 777 S.W.2d 455, 459 (Tex. App.-Dallas 1989, pet. ref'd) (op. on reh'g). ▪ Articles 29.03 and 29.08 of the Texas Code of Criminal Procedure require written and sworn motions for continuance. TEX.CODE CRIM. PROC. ANN. arts.

29.03, 29.08 (Vernon Supp.2002); *see Felan v. State*, 44 S.W.3d 249, 255 (Tex.App.-Fort Worth 2001, pet. ref'd). "A motion for continuance not in writing and not sworn preserves nothing for review." *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex.Crim.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). The language in *Dewberry* does not permit equitable review of an oral motion for continuance; therefore, we decline to follow *O'Rarden*. *See Dixon v. State*, 64 S.W.3d 469, 473 (Tex.App.-Amarillo 2001, no pet.); *Legate v. State*, 52 S.W.3d 797, 806 (Tex. App.-San Antonio 2001, pet. ref'd); *Felan*, 44 S.W.3d at 255; *Munoz v. State*, 24 S.W.3d 427, 430 (Tex.App.-Corpus Christi 2000, no pet.); *see also Woodall v. State*, 77 S.W.3d 388, 401 (Tex.App.-Fort Worth, no pet.) (declining to follow *O'Rarden*, and other cases allowing for oral motions for continuance based on equitable principles). Because Appellant offered an unwritten, unsworn motion for continuance, he preserved nothing for review. Consequently, we overrule his first point. *Cf. State v. Balderas*, 915 S.W.2d 913, 917 (Tex.App.-Houston [1st Dist.] 1996, no pet.) (noting that because trial court found juror properly disabled and proceeded properly with eleven jurors, continuance was unnecessary).

**C. Motion for Mistrial**

▪ In Appellant's second point, he complains the trial court erred by failing to grant a motion for mistrial after it dismissed the juror as emotionally disabled. The Texas Constitution requires a jury in a felony criminal trial to be composed of twelve members. TEX. CONST. art. V, § 13; *Rivera v. State*, 12 S.W.3d 572, 578 (Tex.App.-San Antonio 2000, no pet.). The Texas Constitution and article 36.29 of the Texas Code of Criminal Procedure both provide, however, that if a juror dies

or becomes "disabled" from sitting, the remaining empaneled jury has the power to render the verdict. Tex. Const. art. V, § 13; Tex.Code Crim. Proc. Ann. art. 36.29(a). A juror is disabled only when the juror is physically, emotionally, or mentally impaired in some way that hinders his or her ability to perform the duty of a juror. *Brooks v. State*, 990 S.W.2d 278, 286 (Tex.Crim.App.), *cert. denied*, 528 U.S. 956, 120 S.Ct. 384, 145 L.Ed.2d 300 (1999); *Ponce v. State*, 68 S.W.3d 718, 721 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The determination as to whether a juror is disabled is within the discretion of the trial court. *Brooks*, 990 S.W.2d at 286. Absent an abuse of that discretion, we will not find reversible error. *Id.*

■ The initial question before us is whether the juror was disabled within the context of article 36.29(a). Disability is not limited to physical disease, but includes "any condition that inhibits a juror from fully and fairly performing the functions of a juror." *Reyes v. State*, 30 S.W.3d 409, 411 (Tex.Crim.App.2000) (quoting *Griffin v. State*, 486 S.W.2d 948, 951 (Tex.Crim.App.1972)). The disabling condition may result from physical illness, mental condition, or emotional state. *Reyes*, 30 S.W.3d at 411; *Brooks*, 990 S.W.2d at 286. A juror's bias or prejudice for or against the defendant does not render a juror disabled. *Reyes*, 30 S.W.3d at 412; *Bass v. State*, 622 S.W.2d 101, 106 (Tex.Crim.App.1981), *cert. denied*, 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982).

The evidence reveals the father of the juror in question died the night before trial. The juror stated she could not concentrate and function as a juror knowing she was missing her father's funeral. The trial court verified the death of her father and had the benefit of speaking with her on the telephone to judge her demeanor. Based on the evidence before it, we hold the trial court did not abuse its discretion by dismissing the juror. *See, e.g., Clark v. State*, 500 S.W.2d 107, 108–09 (Tex.Crim. App.1973) (excusing juror as disabled who was emotionally upset by the death of father-in-law); *Allen v. State*, 867 S.W.2d 427, 430 (Tex.App.-Beaumont 1993, no pet.) (declaring dismissal proper when juror's loss of two family members within twenty-four hours rendered them unable to concentrate on case); *Mills v. State*, 747 S.W.2d 818, 820 (Tex.App.-Dallas 1987, no pet.) (determining trial court's dismissal of juror emotionally disturbed by grandfather's recent death was not abuse of discretion).

■ Having held that the trial court did not abuse its discretion by dismissing the juror, our second query is whether the trial court erred by proceeding with eleven jurors rather than granting a mistrial. Generally, the trial court errs if it does not give a defendant the opportunity to choose between continuing with eleven jurors or seeking a mistrial. *Carrillo v. State*, 597 S.W.2d 769, 771 (Tex.Crim.App.1980); *Hegar v. State*, 11 S.W.3d 290, 294 (Tex.App.-Houston [1st Dist.] 1999, no pet.). Notably, it is within the trial court's sound discretion to consider less drastic alternatives to a mistrial. *Strickland v. State*, 741 S.W.2d 551, 552–53 (Tex.App.-Dallas 1987, no pet.). When a trial judge grants a mistrial despite the available option of less drastic alternatives, there is no "manifest necessity" prompting a mistrial and we will find an abuse of discretion. *Ex parte Little*, 887 S.W.2d 62, 66 (Tex.Crim.App. 1994); *Harrison v. State*, 788 S.W.2d 18, 23–24 (Tex.Crim.App.1990).

Here the trial court held a hearing and established facts relevant to proceeding to trial with eleven jurors or continuing the trial with all twelve original jurors. After examining the possibility of losing additional jurors, having a heavy docket for the

next two weeks, and weighing the fact that Appellant had already been in jail for one and one-half years awaiting trial, the trial court decided to dismiss the relevant juror as emotionally disabled and continue the trial with eleven jurors.

After the trial court denied the motion for continuance, Appellant then moved for a mistrial arguing that his rights to due process and effective assistance of counsel were at risk. Despite raising due process and effective assistance of counsel arguments, Appellant has failed, both at trial and on appeal, to articulate how either right is directly implicated by the trial court's proper dismissal of a juror and its decision to continue trial with eleven jurors. Based on these facts, we hold that the trial court did not abuse its discretion by taking the less drastic alternative of continuing to trial with eleven jurors rather than granting Appellant's motion for mistrial. We overrule Appellant's second point.

### D. Excited Utterance

■ In Appellant's third point, he asserts the trial court erred by admitting the testimony of Jacqualine Smalley, the girlfriend of the nontestifying co-defendant Jason Truver. More specifically, Appellant argues that Jacqualine's testimony that Jason said, "Marty's gone" and "Jeremy shot him," was inadmissible hearsay not subject to the excited utterance hearsay exception.[1] We review the trial court's ruling admitting Jacqualine's testimony under an abuse of discretion standard. Thus, we will uphold the trial court's decision if it is within "the zone of reasonable disagreement." *Salazar v. State,* 38 S.W.3d 141, 153–54 (Tex.Crim.App.), *cert.*

*denied,* 534 U.S. 855, 122 S.Ct. 127, 151 L.Ed.2d 82 (2001).

■ The Texas Rules of Evidence define. hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex.R. Evid. 801(d). The rules of evidence provide an exception to the hearsay rule for excited utterances. Tex.R. Evid. 803(2). An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* The foundation of this exception is the belief that the statements made are involuntary and do not allow the declarant an adequate opportunity to fabricate, ensuring their trustworthiness. *Reyes v. State,* 48 S.W.3d 917, 919 (Tex.App.-Fort Worth 2001, no pet.).

■ When determining whether a statement qualifies as an excited utterance, it is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are merely factors to be considered in determining whether the statement is admissible as an excited utterance. *Wood v. State,* 18 S.W.3d 642, 652 (Tex.Crim.App.2000); *Lawton v. State,* 913 S.W.2d 542, 553 (Tex.Crim.App.1995), *cert. denied,* 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). More commonly known elements of an excited utterance are: (1) the statement must be the product of a startling occurrence; (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence; and (3) the statement must be related to

---

1. Appellant also argues that Shad's statement that "I was scared—[Appellant] just shot somebody" demonstrates that Jacqualine's testimony is prohibited hearsay within hearsay. Because Appellant did not raise this issue at trial, he has not preserved his double-hearsay complaint for review. *See* Tex.R.App. P. 33.1(a); *Etheridge v. State,* 903 S.W.2d 1, 14 (Tex.Crim.App.1994), *cert. denied,* 516 U.S. 920, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995).

the circumstances of the startling occurrence. *Couchman v. State*, 3 S.W.3d 155, 158 (Tex.App.-Fort Worth 1999, pet. ref'd). The critical determination, however, is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. *Salazar*, 38 S.W.3d at 154; *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

Jacqualine testified that Jason, Shad, and Appellant left her and Shanon at Appellant's house for about two hours. When they returned from meeting Marty, Shad left, and Jason and Jeremy went out to the scene again. Before Jason and Jeremy left to revisit Marty's death scene, Jason approached Jacqualine to have a conversation. During this conversation, Jacqualine noticed that Jason was "really upset." She described Jason's demeanor as "[d]evastated, nervous." She agreed his demeanor stemmed from something Jason was still upset about and had just happened. Jacqualine testified that Jason said to her, "Marty's gone."

When Jason and Appellant returned from their second trip to the meeting place, nearly two hours later, Jacqualine and Jason drove home. When they arrived home, Jacqualine asked Jason what happened. Jason "got ... excited" and told Jacqualine how he arrived at the meeting place early and let Appellant and Shad out of his car to hide. Jason then left and came back. When Marty and Jason arrived at the same time, Marty got out of his car with a beer in his hand and asked Jason if he had the $2,500. Jason said he had the money and asked Marty if he had the stuff. Marty said he had the stuff and then went to the trunk of his car.

While at his trunk, Appellant said, "Marty," which "spook[ed] him," and Marty ran. Jason told Jacqualine how Shad tackled Marty and then Jason said, "Jeremy shot Marty."

The trial court's admission of Jacqualine's testimony was well within the zone of reasonable disagreement. *See Salazar*, 38 S.W.3d at 154. Jacqualine's testimony shows that Jason's statements, "Marty's gone" and "Jeremy shot Marty," were made while he was dominated by the emotion, fear, pain, and excitement resulting from Appellant's shooting of Marty in his presence together with a second visit to Marty's death scene. It is also apparent his statements were related to the startling occurrence of the assault. We hold the trial court did not abuse its discretion in admitting Jacqualine's testimony about Jason's statements under the excited utterance exception to the hearsay rule. *See, e.g., Wood*, 18 S.W.3d at 652 (evaluating fourteen-hour delay from event as excited utterance); *Snellen v. State*, 923 S.W.2d 238, 243 (Tex.App.-Texarkana 1996, pet. ref'd) (admitting statement made thirteen hours after startling occurrence).

■■■ Appellant further timely objected in the trial court and contends in this court that admitting Jacqualine's testimony about Jason's hearsay statements under the "excited utterance" exception denied his right to confrontation. Appellant cites *Guidry v. State*, 9 S.W.3d 133, 149 (Tex. Crim.App.1999), *cert. denied*, 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000) (holding admission of hearsay evidence against a criminal defendant implicates Confrontation Clause of the Sixth Amendment of the United States Constitution) (citing *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980)).[2]

**2.** The Confrontation Clause of the Sixth Amendment, applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy

Read literally, the Confrontation Clause would require exclusion of any out-of-court statement, a result rejected by *Roberts,* 448 U.S. at 62, 100 S.Ct. at 2537. *See Mendez v. State,* 56 S.W.3d 880, 886 (Tex. App.-Austin 2001, pet. ref'd). However, the United States Supreme Court has consistently held that the Confrontation Clause does not prohibit admission of all hearsay statements against a criminal defendant. *White v. Illinois,* 502 U.S. 346, 352, 112 S.Ct. 736, 741, 116 L.Ed.2d 848 (1992); *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990). Recognizing that hearsay rules and the Confrontation Clause are designed to protect similar values and stem from the same roots, the Supreme Court has sought to steer a "middle course." *White,* 502 U.S. at 352, 112 S.Ct. at 741 (quoting *Roberts,* 448 U.S. at 68 n. 9, 100 S.Ct. at 2540 n. 9).

■ The Confrontation Clause allows admission of hearsay evidence that would be admissible under exceptions to the hearsay rule when the evidence bears sufficient "indicia of reliability." *Wright,* 497 U.S. at 815, 110 S.Ct. at 3146; *see also Lilly v. Virginia,* 527 U.S. 116, 125, 119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999) (noting framers of Sixth Amendment obviously intended to respect certain unquestionable rules of evidence in drafting Confrontation Clause).

■ "Firmly rooted" hearsay exceptions carry "sufficient indicia of reliability" to satisfy the Confrontation Clause. *White,* 502 U.S. at 355 n. 8, 112 S.Ct. at 742 n. 8; *see also Lilly,* 527 U.S. at 125, 119 S.Ct. at 1894 (noting Supreme Court

has allowed admission of statements falling within "firmly rooted" hearsay exceptions). A hearsay exception is "firmly rooted" if, in light of "longstanding judicial and legislative experience," it rests on such a solid foundation that admission of virtually any evidence within it comports with the "substance of the constitutional protection." *Lilly,* 527 U.S. at 126, 119 S.Ct. at 1895.[3]

■ An "excited utterance" falls within a "firmly rooted" exception to the hearsay rule, generally carrying sufficient indicia of reliability to comport with the Confrontation Clause. *White,* 502 U.S. at 356 n. 8, 112 S.Ct. at 742, n. 8 (noting exception is at least two centuries old and may date to late 17th Century); *Penry v. State,* 903 S.W.2d 715, 751 (Tex.Crim.App.1995) (recognizing exception for "excited utterance" as "old and firmly rooted"), *cert. denied,* 516 U.S. 1069, 116 S.Ct. 759, 133 L.Ed.2d 705 (1996); *Woodall v. State,* 77 S.W.3d 388, 399 (Tex.App.-Fort Worth 2002, pet. ref'd) (describing "excited utterance" exception as "firmly rooted").

Our analysis would end there but for Appellant's contention that the usual circumstances indicating reliability of hearsay as an "excited utterance" are not sufficient to satisfy the Confrontation Clause where the declarant, as in this case, was a co-defendant whose statement inculpated the defendant. Citing *Guidry,* Appellant contends that the statements by Jason here were "presumptively unreliable." 9 S.W.3d at 149 (holding co-defendant's hearsay statement against penal interest "presumptively unreliable" absent independent corroborating circumstances of reliability).

---

the right … to be confronted with the witnesses against him." U.S. CONST. amend. VI.

**3.** Even if it does not fall within a "firmly rooted" exception, hearsay may satisfy the Confrontation Clause if the evidence meets

"particularized guarantees of trustworthiness." *Wright,* 497 U.S. at 815, 110 S.Ct. at 3146 (citing *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539). That second basis is not at issue here.

As previously noted, *Guidry* involved the exception for statements against penal interest.[4] We have found no Texas case addressing whether a statement admissible as an "excited utterance," rather than as a statement against penal interest, may violate the Confrontation Clause absent additional indicia of reliability. However, we agree with the reasoning in a recent New Jersey case involving a similar issue, that the analysis used for Confrontation Clause challenges to statements against penal interest should similarly apply to statements by co-defendants sought to be admitted as excited utterances. *State v. Rivera*, 351 N.J.Super. 93, 106–07, 797 A.2d 175, 183 (App.Div.2002) (concluding that the rationale of cases involving statements against penal interest applied equally to a statement of a non-testifying co-defendant admitted as an excited utterance).

Like the "excited utterance" exception, the hearsay exception for statements against penal interest has been held to be "firmly rooted." *See, e.g., Dewberry v. State*, 4 S.W.3d 735, 751–54 (Tex.Crim. App.1999), *cert. denied*, 529 U.S. 1131, 120

S.Ct. 2008, 146 L.Ed.2d 958 (2000). The United States Supreme Court has said that, due to the sweeping scope of the label, the "against penal interest" exception "defines too large a class for meaningful Confrontation Clause analysis." *Lilly*, 527 U.S. at 127, 119 S.Ct. at 1895 (quoting *Lee v. Illinois*, 476 U.S. 530, 544 n. 5, 106 S.Ct. 2056, 2064 n. 5, 90 L.Ed.2d 514 (1986)).

In *Lilly*, the Supreme Court identified three categories of statements against penal interest by co-defendants: (1) voluntary admissions, offered against the declarant; (2) statements exculpatory of the defendant, offered by the defendant; and (3) statements inculpating both the declarant and the defendant, offered to establish guilt of the defendant.[5] *Id.* The third category is at issue in this case. This type of statement further breaks down into several categories. Accomplice's statements to law enforcement officers while in custody, inculpating themselves as well as the defendant, have been held "presumptively unreliable" and inadmissible, absent circumstances indepen-

---

4. Rule 803(24) provides the exception for statements against penal interest as follows: Statement Against Interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.... [A] statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
   Tex.R. Evid. 803(24).

5. Pre-trial confessions of a co-defendant are not admissible against the other defendant unless the declarant takes the stand. *Lilly*, 527 U.S. at 127, 119 S.Ct. at 1895 (citing

*Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)); *see also Gray v. Maryland*, 523 U.S. 185, 194–95, 118 S.Ct. 1151, 1156, 140 L.Ed.2d 294 (1998). Self-inculpatory statements by the co-defendant offered as exculpatory evidence are admissible when circumstances surrounding the statement contain sufficient indicia of reliability. *Lilly*, 527 U.S. at 130, 119 S.Ct. at 1897; *Chambers v. Mississippi*, 410 U.S. 284, 300, 93 S.Ct. 1038, 1048, 35 L.Ed.2d 297 (1973) (holding Due Process Clause affords criminal defendant right to introduce third party's declaration against penal interest when circumstances surrounding statement provide sufficient assurance of reliability). Such statements do not implicate the Confrontation Clause because they are offered by the accused. *Lilly*, 527 U.S. at 130, 119 S.Ct. at 1897; *see also Davis v. State*, 872 S.W.2d 743, 747 n. 8 (Tex.Crim.App.1994).

dently establishing reliability. *Lilly*, 527 U.S. at 131, 119 S.Ct. at 1897 (quoting *Lee*, 476 U.S. at 541, 106 S.Ct. at 2062, and explaining that when the declarant stands to gain by inculpating the accused, the accusation is inherently suspect and must be subjected to the rigors of cross-examination); *Williamson v. United States*, 512 U.S. 594, 599, 114 S.Ct. 2431, 2434, 129 L.Ed.2d 476 (1994) (noting presumptive unreliability of "non-self-inculpatory" portions of an accomplice's statement against his own penal interest).

Similarly, statements implicating the defendant, made by a co-defendant at the time of an arrest, have been held to be presumptively unreliable, absent circumstances furnishing indicia of reliability. *See Lee*, 476 U.S. at 541, 106 S.Ct. at 2062 ("[A]rrest statements of a co[-]defendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a co[-]defendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence." (quoting *Bruton*, 391 U.S. at 141, 88 S.Ct. at 1631 (White, J., dissenting))).[6]

Texas courts have likewise recognized that hearsay sought to be introduced as a statement against penal interest of a declarant, while the product of interrogation by a law enforcement officer, is "presumptively unreliable" as to portions implicating the defendant because of the danger that it is calculated to curry favor, shift or spread the blame, or otherwise divert attention away from the declarant's own culpability. *See Cofield v. State*, 891 S.W.2d 952, 954 (Tex.Crim.App.1994) (holding co-defendant's confession to law enforcement officer "presumptively unreliable" as to passages inculpating defendant at trial absent corroborating circumstances clearly indicating trustworthiness); *see also Mendez v. State*, 56 S.W.3d 880, 887 (Tex.App.-Austin 2001, pet. ref'd) (holding presumption of unreliability not rebutted where statement tended to shift blame, minimize declarant's responsibility, and did not clearly indicate trustworthiness under test established in *Davis v. State*, 872 S.W.2d 743, 747–48 (Tex.Crim.App.1994)); *but see Bullock v. State*, 982 S.W.2d 579, 582 (Tex. App.-Houston [1st Dist.] 1998, pet. ref'd), *cert. denied*, 529 U.S. 1066, 120 S.Ct. 1672, 146 L.Ed.2d 481 (2000) (holding independent corroborating circumstances, including defendant's own confession, showed statement to police by co-defendant inculpating defendant at time of arrest sufficiently reliable to clearly indicate trustworthiness).[7]

In contrast, circumstances showing that a co-defendant's statement against penal interest was made before being placed under suspicion or arrest or that it was made *spontaneously* to friends or other acquaintances, rather than to law enforcement officers, have been held sufficient evidence to rebut the presumption of unreliability so as not to violate the Confrontation Clause. *Dewberry*, 4 S.W.3d at 751, 752 (holding statement admissible under against-penal-

---

**6.** *But see United States v. Lim*, 984 F.2d 331, 336 (9th Cir.1993), *cert. denied*, 508 U.S. 965, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993) (holding statement by co-defendant attributing ownership of drugs to defendant upon arrest admissible); *United States v. Vazquez*, 857 F.2d 857, 864–65 (1st Cir.1988) (rejecting Confrontation Clause objection regarding statement implicating defendant at time of arrest).

**7.** Under Texas case law, to be admissible against the defendant, a statement against penal interest by a third party requires that the statement (1) implicate the declarant equally with defendant and (2) be sufficiently corroborated to "clearly indicate the trustworthiness of the statement." Tex.R. Evid. 803(24); *Guidry*, 9 S.W.3d at 149 (citing *Dewberry*, 4 S.W.3d at 744–45).

interest exception where, among other circumstances indicating reliability, the statements incriminating the defendant were made before declarant became a suspect and were "spontaneous" to friends and acquaintances unconnected with crime); *see also White*, 502 U.S. at 355, 112 S.Ct. at 742 (noting that a "spontaneous" statement, or one made in a state of excitement without time for reflection, carries special guarantee of credibility materially different from confession or statement in prior court proceeding).

Courts in other jurisdictions directly addressing "excited utterances" by co-defendants have consistently rejected Confrontation Clause challenges to statements by co-defendants inculpating a defendant where the statements were admissible under the "firmly rooted" excited utterance exception and were made to friends or acquaintances rather than law enforcement officers. *See, e.g., Martinez v. McCaughtry*, 951 F.2d 130, 134 (7th Cir.1991); *McLaughlin v. Vinzant*, 522 F.2d 448, 449–51 (1st Cir.), *cert. denied*, 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975); *State v. Davis*, 141 Wash.2d 798, 10 P.3d 977, 1004 (2000); *State v. Dennis*, 337 S.C. 275, 523 S.E.2d 173, 178 (1999); *accord*, *Rivera*, 797 A.2d at 180 (providing thorough analysis of case law, but holding admission of "excited utterance" made by participant in criminal activity to police officers upon arrest and implicating defendant, displayed features distinguishing it from "ordinary excited utterance" and compelled further analysis to assure reliability under Confrontation Clause).

Jason's statements were made to his fiancé, Jacqualine, rather than to a law enforcement officer, and they were also made before he was a suspect or in custody. These facts furnished independent indicia of reliability, in addition to the factors previously discussed, showing spontaneity and rendering his statements admissible as an "excited utterance," a firmly rooted exception to the hearsay rule. We hold that these circumstances provide adequate assurance of trustworthiness to satisfy the reliability requirement of the Confrontation Clause in the context of the statements of the co-defendant in this case. *White*, 502 U.S. at 356 n. 8, 112 S.Ct. at 742 n. 8; *Wright*, 497 U.S. at 817, 110 S.Ct. at 3147. We overrule Appellant's complaint that admission of the statements violated his right of confrontation. Appellant's third point is overruled.

### E. Excluding Witness Statements

■ In Appellant's fourth point, he contends the trial court erred by granting the State's objections to two witnesses' testimony during the trial's punishment phase. More precisely, Appellant argues that his brother's and aunt's testimony regarding the bases for their opinions that Appellant was not guilty was admissible. We review a trial court's exclusion of evidence under an abuse of discretion standard of review. *Love v. State*, 861 S.W.2d 899, 903 (Tex.Crim.App.1993); *Roberts v. State*, 963 S.W.2d 894, 901 (Tex.App.-Texarkana 1998, no pet.). Whether the trial court abused its discretion depends on the facts of each case. *Love*, 861 S.W.2d at 903; *Roberts*, 963 S.W.2d at 901.

During the trial's punishment phase, Appellant offered the testimony of his brother, Jonathan Wayne Ricketts, and his aunt, Judy Puckett. It was established during cross examination that Jonathan did not believe his brother was guilty of murder. On redirect examination, defense counsel asked Jonathan, "Do you know other facts ... other than what was presented to this jury?" The State objected saying, "Your Honor, I'm going to object to that." The trial court sustained the objection, and defense counsel passed the witness.

Appellant also called his aunt, Judy Puckett, to testify on behalf of his good character. During re-direct examination, defense counsel asked Judy if she thought Appellant was a cold-blooded killer, as portrayed by the State. Judy said she did not believe Appellant was a cold-blooded killer. Defense counsel then asked Judy, "And is that opinion based on perhaps some other things this jury doesn't know about?" The State objected, saying this question "raise[s] the same objection as previously raised." The trial court sustained the objection, and defense counsel passed the witness.

The State argues Appellant failed to preserve error by failing to make an offer of proof. Under Texas Rule of Evidence 103, a party may not predicate error on a ruling that excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the court by offer of proof or was apparent from the context of the questions asked. TEX.R. EVID. 103(a)(2). Error in the exclusion of evidence may not be urged unless the proponent perfected an offer of proof or a bill of exceptions. *Guidry v. State*, 9 S.W.3d 133, 153 (Tex.Crim.App. 1999), *cert. denied*, 531 U.S. 837, 121 S.Ct. 98, 148 L.Ed.2d 57 (2000); *Williams v. State*, 936 S.W.2d 399, 404 (Tex.App.-Fort Worth 1996, pet. ref'd). Absent a showing of what such testimony would have been, or an offer of a statement concerning what the excluded evidence would show, nothing is presented for review. *Guidry*, 9 S.W.3d at 153.

As the facts reveal, Appellant did not make an offer of proof regarding the contents of Jonathan's and Judy's testimony. As such, Appellant has failed to present anything for our review on appeal. *See Love*, 861 S.W.2d at 903; *Roberts*, 963 S.W.2d at 901; *Williams*, 936 S.W.2d at 404. We overrule Appellant's fourth point.

## IV. CONCLUSION

Having overruled all of Appellant's points, we affirm the trial court's judgment.