COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-291-CR

 

 

REBECCA JO PAULMAN                                                       APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

               FROM
THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------

Appellant Rebecca Jo Paulman
appeals her conviction for possession of 
a controlled substance.  In seven
points, she contends that the trial court erred 
by denying her oral motion for continuance and by not determining her
competency between the guilt innocence and punishment phases, and that the evidence
is legally and factually insufficient to support the verdict.   We affirm.








I.  Background Facts

In response to neighborhood
complaints, police conducted surveillance of appellant=s Lake Dallas residence to determine if it was the site of criminal
activity.  They ran license plate checks
on the numerous cars that came and went, and they discovered that most of the
owners were from out of town and that some had narcotics histories.  An examination of the contents of a trash
container left outside the house revealed marihuana, drug paraphernalia, and
methamphetamine residue.

Upon executing a search
warrant, the police found appellant by a computer table and her husband in the
living room.  Appellant told the officers
that she had methamphetamine in her computer desk, and she showed them a
plastic bag containing just over one gram of methamphetamine.  In addition to marihuana and various items of
drug paraphernalia, the officers found more methamphetamine on top of another
computer desk and in the bedroom.  The
total weight of methamphetamine recovered from the house was 17.57 grams.         Appellant was charged with possessing
four grams or more, but less than two hundred grams, of methamphetamine.[2]  The jury found her guilty and assessed
punishment at seven-and-a-half years= confinement.  








II. Oral, Unsworn Motion for Continuance

In points
one, two, and three, appellant claims that the trial court erred in overruling
her oral, unsworn motion for continuance presented at the start of the
punishment phase.  Oral, unsworn motions
for continuance, however,  preserve
nothing for review.[3]  We, therefore, overrule points one, two, and
three.

III. Competency to Stand
Trial

In points four and five,
appellant contends that the trial court violated her due process rights under
the state and federal constitutions by proceeding to the punishment phase
without first determining whether she was incompetent, despite her trial
counsel=s assertion that appellant was no longer competent to stand trial.[4]













Federal due process requires
that the trial court sua sponte conduct an inquiry into competency when
sufficient information indicating that the defendant may be incompetent is
available to the trial court.[5]  These due process concerns are codified in
Chapter 46B of the Texas Code of Criminal Procedure, which provides the
statutory framework for competency determinations.[6]  Under this statute, a person is presumed
competent to stand trial and shall be found competent to do so unless proved
incompetent by a preponderance of the evidence.[7]  A person is incompetent to stand trial if he
does not have sufficient present ability to consult with his lawyer with a
reasonable degree of rational understanding or a rational, as well as factual,
understanding of the proceedings against him.[8]   If any evidence suggesting that the
defendant may be incompetent comes to the trial court=s attention, the trial court shall sua sponte suggest that the
defendant may be incompetent and shall then determine by informal inquiry
whether there is some evidence from any source that would support a finding
that the defendant may be incompetent to stand trial.[9]

Evidence suggesting that the
defendant may be incompetent to stand trial is sufficient if it creates a bona
fide doubt in the judge=s mind as to
the defendant=s ability to
consult with his attorneys with a reasonable degree of rational understanding
or as to his rational and factual understanding of the proceedings against him.[10]  Evidence is sufficient to create a bona fide
doubt if it shows Arecent
severe mental illness, at least moderate retardation, or truly bizarre acts by
the defendant.@[11]  








If, after an informal
inquiry, the court determines that evidence exists to support a finding of
incompetency, the court shall order an examination to determine whether the
defendant is incompetent to stand trial.[12]  We review a trial court=s decision not to conduct a competency inquiry for an abuse of
discretion.[13]   








In reviewing the record, we
find no evidence sufficient to raise a bona fide doubt that appellant was
incompetent to stand trial during the punishment phase of her trial.  The evidence shows that appellant was a Abipolar manic-depressive@ and was taking a prescription for this condition.  There is no evidence, however, that she
suffered from a severe mental illness or moderate retardation, nor is there
evidence that she engaged in any bizarre acts.[14]   Moreover, there is no evidence that she
lacked the capacity to consult with her attorney with a reasonable degree of
rational understanding, or that she did not understand the nature of the
proceedings against her.[15]  While her counsel indicated that appellant
had dozed off during the testimony of one of the State=s witnesses because she had skipped her medication, and that he had to
wake her to get her to help him with some of the issues, he did not complain
that he could not wake her and that when he did, she  was unable to assist him with her
defense.  She was only without her
medication for less than one hour of the trial. 
During that time, the State presented one witness, which counsel
competently and effectively cross examined. 
The court then broke for lunch, during which time appellant received her
medication, and she was thereafter able to lucidly and rationally testify in
her own defense. 

Because there was no evidence
sufficient to raise a bona fide doubt that appellant was incompetent, the trial
court did not abuse its discretion by not initiating competency proceedings
under chapter 46B.  We overrule appellant=s points four and five.

IV.  Evidence Sufficiency

In points six and seven,
appellant claims that the evidence is legally and factually insufficient to
support her conviction for possession, either individually or as a party, of
any quantity over one gram.  She argues
that the State failed to link her to any methamphetamine over the amount that
she admitted possessing and she argues that the State failed to prove that the
drugs she admitted possessing weighed more than one gram.








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.[16]


When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party.[17]   We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.[18]   








To prove unlawful possession,
the State had to prove that appellant (1) exercised actual care, custody,
control, or management over the contraband and (2) that she knew the matter
possessed was contraband.[19]  The State does not have to prove that the
accused had exclusive possession of the contraband; joint possession is
sufficient to sustain a conviction.[20]  When there is no evidence that the accused
was in exclusive control of the place where the contraband was found, however,
the State must offer additional, independent facts and circumstances that Alink@ the accused
to the contraband.[21]  Whether this evidence is direct or
circumstantial, Ait must
establish, to the requisite level of confidence, that the accused=s connection with the drug was more than just fortuitous.@[22] 








No formula of facts exists to
dictate a finding of links sufficient to support an inference of knowing
possession.[23]  It is the logical force of the evidence, and
not the number of links, that supports a fact-finder=s verdict.[24]  Possible links include but are not limited to
(1) whether the defendant was present when the drugs were found; (2) whether
the drugs were in plain view; (3) the defendant=s proximity to and the accessibility of the drugs; (4) whether the
defendant was under the influence of drugs when arrested; (5) whether the
defendant possessed other contraband or drugs when arrested; (6) whether the
defendant made any incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures;
(9) whether there was an odor of drugs; (10) whether other contraband or other
drug paraphernalia was present; (11) whether the defendant owned or had the
right to possess the place where the drugs were found; (12) whether the place
the drugs were found was enclosed; (13) whether the defendant was found with a
large amount of cash; and (14) whether the conduct of the defendant indicated a
consciousness of guilt.[25]

Appellant concedes that she
possessed approximately 1.53 grams of methamphetamine.  The forensic scientist from the Department of
Public Safety=s crime lab
in Garland testified that the total amount of methamphetamine recovered from
appellant=s house
weighed 17.57 grams.  Thus, we find that
the evidence is legally and factually sufficient to show that the
methamphetamine recovered from the house weighed four or more grams. 








In addition, the evidence is
legally and factually sufficient to show that appellant possessed the
drugs.  Appellant had lived with her
husband, an admitted methamphetamine dealer, for more than a year in a small,
one bedroom house.  During that time,
there was enough activity and traffic at the house to cause neighbors to
complain to the police.  In response to
these complaints, the police set up surveillance of the house and upon
examining the trash outside, discovered paraphernalia, marihuana and
methamphetamine. When the officers executed a search warrant, they found
appellant in close proximity to methamphetamine, marihuana, and
paraphernalia.  Of the methamphetamine,
approximately sixteen grams were in a black zippered case in plain view on a
desk no more than twelve feet from appellant=s desk where she admitted possessing approximately one gram of
methamphetamine.  The police found just
under two grams of methamphetamine in the only bedroom on a bedside table.  Appellant made incriminating statements,
admitting that she possessed methamphetamine and that Ait was just a matter of time before our ticket got punched.@  We find this evidence
sufficient to link appellant to the total amount of methamphetamine admitted
during trial.

Appellant=s sixth and seventh points are overruled.

                                              V.  Conclusion   

Because we have overruled all
of appellant=s points, we
affirm the trial court=s judgment.

 

PER CURIAM

 

PANEL:  CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

 

DO NOT PUBLISH 

Tex.
R. App. P. 47.2(b)








DELIVERED:  October 9, 2008                          











[1]See Tex.
R. App. P. 47.4.





[2]See Tex.
Health & Safety Code Ann. ' 481.115(d) (Vernon
2003).





[3]E.g.,
Dewberry v. State, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1131 (2000); Matamoros v. State, 901 S.W.2d 470,
478 (Tex. Crim. App. 1995); Ricketts v. State, 89 S.W.3d 312, 317 (Tex.
App.CFort
Worth 2002, pet. ref=d); see
also Tex. Code Crim. Proc. Ann. arts. 29.03, 29.06, 29.08 (Vernon 2006).





[4]See Tex.
Code Crim. Proc. Ann. art. 46B.004(b) (Vernon 2006).





[5]Drope
v. Missouri, 420 U.S. 162, 171B72,
95 S. Ct. 896 (1975);  Pate v.
Robinson, 383 U.S. 375, 378, 86 S. Ct. 836 (1966); McDaniel v. State,
98 S.W.3d 704, 709 (Tex. Crim. App. 2003).





[6]The
prior law, code of criminal procedure article 46.02, was drafted to accommodate
and incorporate federal due process concerns. 
42 George E. Dix & Robert O. Dawson, Texas Practice: Criminal
Practice and Procedure ' 26.21 (2d ed. 2001); see
McDaniel, 98 S.W.3d at 704. 
Effective January 1, 2004, the legislature repealed article 46.02 and
replaced it with article 46B.  See Act
of April 30, 2003, 78th Leg., R.S., ch. 35, '' 15B17,
2003 Tex. Gen. Laws 57, 72 (current version at Tex. Code Crim. Proc. Ann. art.
46B (Vernon 2006)).





[7]Tex.
Code Crim. Proc. Ann. art. 46B.003(b) (Vernon 2006).





[8]Id.
art. 46B.003(a); Fuller v. State, 253 S.W.3d 220, 228 (Tex. Crim. App.
2008).





[9]Tex.
Code Crim. Proc. Ann. art. 46B.004 (Vernon 2006); Fuller, 253 S.W.3d at
228.





[10]Fuller, 253
S.W.3d at 228. 





[11]Id.
(quoting McDaniel, 98 S.W.3d at 710). 





[12]Tex.
Code Crim. Proc. Ann. art. 46B.005(a) (Vernon 2006); Lawrence v. State,
169 S.W.3d 319, 322 (Tex. App.CFort Worth 2005, pet. ref=d).





[13]Moore
v. State, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999), cert.
denied, 530 U.S. 1216 (2000); Lawrence, 169 S.W.3d at 321.





[14]See
Fuller, 253 S.W.3d at 228; McDaniel, 98 S.W.3d at 710. 





[15]See
Fuller, 253 S.W.3d at 228. 





[16]Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).





[17]Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 





[18]Watson, 204
S.W.3d at 414B15,
417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  





[19]Tex.
Health & Safety Code Ann. '' 481.002(38), 481.115(d)
(Vernon 2003); Poindexter v. State, 153 S.W.3d 402, 405B06
(Tex. Crim. App. 2005).





[20]See
Cude v. State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986).





[21]See
Poindexter, 153 S.W.3d at 406.





[22]Id.
quoting Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App.
1995).





[23]See
Taylor v. State, 106 S.W.3d 827, 831 (Tex. App.CDallas,
no pet.) 





[24]See
Evans v. State, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006).





[25]Id. at
162 n.12.