

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00193-CR

---

ANDREW CASTILLO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. DC-2023-CR-0108, Honorable William R. Eichman, II, Presiding

---

August 27, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Following a plea of not guilty, Appellant, Andrew Castillo, was convicted by a jury of aggravated sexual assault of a child.[1]  By his six issues, he contends the trial court erred by: (1) setting a competency hearing not authorized by statute; (2) granting the State's late-filed motion for redetermination when it lacked jurisdiction; (3) shifting the burden to him to prove continuing incompetency; (4) denying his motion to suppress his

---

[1] TEX. PENAL CODE ANN. § 22.021(a)(2)(B).

confession; (5) failing to exclude certain exhibits which were not relevant and prejudicial; and (6) improperly permitting an inadmissible outcry statement. We affirm.

## BACKGROUND

One evening, Appellant and the mother of his child went to sleep in their bedroom. The mother awoke in the middle of the night to find Appellant not in the couple's bed. She frantically searched the home and found Appellant naked in the living room next to their three year old daughter. Mother grabbed the child and asked her what happened, and the child pointed to the car in the driveway and said, "Daddy touched my butt." Appellant was adamant nothing happened and left the house, and mother asked her ex-boyfriend to stay the rest of the night to keep Appellant away. Upon questioning her daughter again, the child said to her mother, "Daddy hurt my butt." The following day, mother reported the incident to the police.[2] The daughter was examined by a sexual assault nurse examiner who confirmed she had suffered an injury to her anus.[3] After the exam, mother brought her daughter to the Child Assessment Center of the South Plains ("CAC") for a forensic interview, but the interview was rescheduled to the following day due to the child being emotional and uncooperative. The police also investigated the child's allegation. During the investigation, detectives discovered text messages sent by Appellant to mother admitting he assaulted his daughter. Appellant was arrested and charged with sexual assault of a child.

---

[2] Mother apparently waited out of concern about her children—the daughter and her three older brothers—being taken away by CPS. Apparently, this occurred previously with her children.

[3] The nurse examiner could not determine the cause of the injury.

2

In 2018, after his arrest, Appellant was declared incompetent to stand trial and committed to a long-term treatment facility. In 2021, the forensic psychologist acting as the head of the facility, Dr. Mitchell, filed a report stating Appellant had regained his competence. After a hearing and examining the Appellant, the trial court determined he was still incompetent to stand trial and signed an order continuing the commitment. Less than 91 days later, Dr. Mitchell filed another request for redetermination without any additional evidence of competency, and the hearing on the motion, which began in late 2021 was continued to March 2022. During the pendency of Dr. Mitchell's motion, the commitment order expired. The trial court denied the motion, and a month later the State filed another motion for redetermination of Appellant's competency. The trial court held another competency hearing based on the State's motion and found Appellant competent to stand trial. At trial, a jury found him guilty and sentenced him to life imprisonment and a fine of $10,000. This appeal followed.

## APPLICABLE LAW

"As a matter of constitutional due process, a criminal defendant who is incompetent may not stand trial." *Bluntson v. State*, No. AP-77,067, 2021 Tex. Crim. App. Unpub. LEXIS 349, at *8 (Tex. Crim. App. June 30, 2021) (quoting *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018)). "Due process also mandates state procedures that are adequate to assure that incompetent defendants are not put to trial." *Bluntson*, 2021 Tex. Crim. App. Unpub. LEXIS 349, at *8 (quoting *Turner v. State*, 422 S.W.3d 676, 689 (Tex. Crim. App. 2013)). The procedures governing determination of competency of a defendant to stand trial are embodied in chapter 46B of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. arts. 46B.001–46B.171.

3

The defendant is presumed competent to stand trial unless proved to be incompetent by a preponderance of the evidence. Art. 46B.003(b). When the defendant is charged with a felony, if after hearing evidence a trial court determines the defendant is not competent, the court is required to order the defendant to a restoration competency program. Art. 46B.071(a). If, however, the trial court determines the defendant is not only incompetent but is unlikely to be restored to competency in the foreseeable future, it is required to hold a hearing to determine if the defendant should be committed to a mental health facility under the Texas Health & Safety Code. Arts. 46B.071(b), 46B.102; TEX. HEALTH & SAFETY CODE ANN. §§ 574.001–574.203.

An order of commitment to a mental health facility may be extended for a maximum of twelve months. TEX. HEALTH & SAFETY CODE ANN. § 574.035(h). After the expiration of the court's order and subject to disapproval by the trial court or the State's attorney, if the mental health facility wishes to release the defendant, it must notify the trial court of the release within fourteen days and whether the defendant has attained competency to stand trial. § 574.085; TEX. CODE CRIM. PROC. ANN. art. 46B.107(a)–(c). Upon receiving notice from the facility, or on motion of the State's attorney or its own motion, the trial court is required to hold a hearing to determine if the defendant should be released under the criteria prescribed in the Health & Safety Code. TEX. CODE CRIM. PROC. ANN. art. 46B.107(d); TEX. HEALTH & SAFETY CODE ANN. § 574.035(a). The trial court must find by clear and convincing evidence the defendant has not been restored to competence.

During the commitment, the trial court may, at any time, on its own motion or on the motion of the facility head or State's attorneys, hold a hearing to determine if the defendant has been restored to competency. TEX. CODE CRIM. PROC. ANN. art. 46B.108.

4

If the facility head provides an opinion the defendant has regained competency, the defendant bears the burden of proving by preponderance his continuing incompetency. Art. 46B.113(d). If no opinion has been provided, it is the State's burden to prove the defendant's competency by a preponderance. Art. 46B.113(e). If the trial court has entered a determination of incompetency within 91 days of the filing of the motion, the trial court may hold a hearing only if it "first finds reason to believe the defendant's condition has materially changed since the prior determination that the defendant was not restored to competency." Art. 46B.115(b). If the defendant is found competent, the trial on the criminal charge may proceed. Art. 46B.116.

## STANDARD OF REVIEW

A trial judge's finding regarding competency is reviewed under an abuse of discretion standard. *Mason v. State*, No. 07-14-00345-CR, 2015 Tex. App. LEXIS 12515, at *10 (Tex. App.—Amarillo Dec. 9, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999)); *see also Luna v. State*, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008). An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Id.* A trial court "abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020) (citing *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). A trial court does not abuse its discretion unless "its decision falls outside the zone of reasonable disagreement." *Aceituno-Urbina v. State*, No. 07-22-00205-CR, 2023 Tex. App. LEXIS 4262, at *2 (Tex.

5

App.—Amarillo June 16, 2023, pet. filed) (mem. op., not designated for publication) (citing *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016)). We will not reverse the trial court's decision unless we find that the ruling lies outside the zone of reasonable disagreement. *Id.*

We review a trial court's ruling on the admissibility of evidence, including a motion to suppress evidence, for an abuse of discretion. *Ballard v. State*, No. 07-16-00333-CR, 2017 Tex. App. LEXIS 11719, at *6 (Tex. App.—Amarillo Dec. 15, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *see Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005)). *See also supra.* (abuse of discretion only when decision is outside the "zone of reasonable disagreement"). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Id.* We must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Id.*

ANALYSIS

**ISSUES ONE AND TWO—REDETERMINATION OF COMPETENCY**

Appellant's first issue challenges the trial court's authority to hold a hearing to redetermine his competency after being found incompetent. His second issue asserts the trial court could not properly consider the State's motion for redetermination of his competency because it was filed "untimely." Both complaints focus on the fact the State filed its motion for redetermination of his competency after the trial court's commitment order expired. According to Appellant, once the commitment order expired, the trial court was procedurally deprived of the ability to make a redetermination of his competency

6

under article 46B.108. Because his last status was determined to be "not competent, not restorable"—a requirement for long-term commitment—he claims the court had only one course of action available: to conduct a new competency hearing under articles 46B.004 and 46B.071. He concludes the trial court was not statutorily authorized to redetermine his competency once the commitment order expired, and its ruling on the State's motion constituted an abuse of discretion. We disagree.

When interpreting a statute, we look to the literal text for its meaning. *Cook v. State*, 644 S.W.3d 763, 768–69 (Tex. App.—Amarillo 2022, no pet.) (citing *Martin v. State*, 635 S.W.3d 672, 677–78 (Tex. Crim. App. 2021)). The plain meaning of the statute controls unless the language is ambiguous or its application "would lead to absurd consequences that the Legislature could not possibly have intended." *Id.* "To determine plain meaning, we read the statute in context and give effect to each word, phrase, clause, and sentence if reasonably possible, and construe them according to any applicable technical definitions and otherwise according to the rules of grammar and common usage." *Cook*, 644 S.W.3d at 768–69 (citing *Lopez v. State*, 600 S.W.3d 43, 45 (Tex. Crim. App. 2020)).

If the trial court determines the defendant is incompetent to stand trial and is not likely to regain competence in the foreseeable future, it can commit the defendant to a mental health facility. TEX. CODE CRIM. PROC. ANN. arts. 46B.071(b)(1); 46B.084(e). After it orders the defendant committed to a mental health facility, the trial court retains broad statutory discretion to redetermine his competency:

> If criminal charges against a defendant found incompetent to stand trial have not been dismissed, the trial court **at any time** may determine whether the defendant has been restored to competency.

7

Art. 46B.108(a) (emphasis added).

The determination may be made at the request of the State or on the trial court's own motion. *Id.* Appellant does not dispute the meaning of the terms "at any time," but he argues the case was no longer under subchapter E, and therefore the trial court lost its jurisdiction to hold a hearing for redetermination.

Appellant was initially ordered to a restoration program for 120 days, and, upon his return to court, the trial court ordered his commitment for a period of twelve months under article 46B.084(e). Appellant agrees, had the State brought forth its motion any time before the expiration of the order, he would not be complaining about it on appeal. However, once the order expired, he argues a procedural gap occurs in chapter 46B because there is no express language addressing this specific scenario. The lack of express procedural direction, Appellant urges, left the trial court with no choice but to start over under article 46B.071, and should have ordered him to either a restoration program or conducted a new long-term commitment hearing under subchapter E. Art. 46B.071 a)(2), (b)(1).

It is the determination of competency by the trial court which triggers the various procedural paths under chapter 46B, including the subchapter E procedures. Once the trial court determined Appellant was incompetent and unlikely to attain competency within the foreseeable future, i.e., "not competent, not restorable," the trial court was required to proceed under subchapter E. *See* arts. 46B.071(b)(1); 46B.084(e). Once under subchapter E, the court had the power to redetermine competency "at any time." Art. 46B.108(a). Despite the expiration of the commitment order, the trial court's determination Appellant was "not competent, not restorable" remained, and the trial court

8

was still required to proceed under subchapter E. *See* art. 46B.101.[4] Because the trial

court was required to continue under subchapter E, it retained the power to redetermine

competency at any time, including after the expiration of the commitment order. *Id.*[5]

We cannot say the trial court's ruling on the State's motion for redetermination was

outside the zone of reasonable disagreement. The trial court did not abuse its discretion

in holding a hearing to redetermine Appellant's competency under article 46B.108. We

overrule Appellant's first and second issues.

**ISSUE THREE—BURDEN TO PROVE INCOMPETENCE**

By his third issue, Appellant complains the trial court applied the wrong burden of

proof during the hearing to redetermine his competency. He contends Dr. Mitchell did not

provide a valid opinion of his return to competency, and therefore the burden to prove

incompetency remained with the State.

Under article 46B.113 of the Code of Criminal Procedure, if the head of the facility

to which the defendant is committed provides an opinion the defendant has regained

competency, the defendant bears the burden of proving by preponderance his continuing

incompetency. Art. 46B.113(d). If no opinion has been provided, it is the State's burden

to prove the defendant's competency by a preponderance. Art. 46B.113(e). In the State's

motion for redetermination, it attached a letter and examination previously filed in August

---

[4] "This subchapter [E] applies to a defendant against whom a court is required to proceed according to [a]rticle 46B.084(e) or according to the court's appropriate determination under [a]rticle 46B.071."

[5] Alternatively, Appellant suggests the trial court was free to "start over" with the initial restoration period, but the statute prohibits the trial court from ordering more than one initial period of restoration and one extension in connection with the same offense, and "any subsequent court orders for treatment must be issued under [s]ubchapter E or F." Art. 46B.085(a), (b). Thus, the trial court had no discretion to begin the competency process anew and was bound to continue to proceed under the subchapter E procedures.

2021 by Dr. Mitchell requesting redetermination based upon his opinion Appellant had regained competency. Appellant urges the trial court erred in considering the letter because the trial court previously denied the request for redetermination by Dr. Mitchell based upon the same August 2021 evaluation. Particularly, the trial court denied Dr. Mitchell's request because the evaluation was submitted within 91 days of a previous request for redetermination and did not allege any material change in the condition of Appellant. *See* art. 46B.115(a), (b). The State nonetheless argues Dr. Mitchell's opinion of competency may still be used for its subsequent motion for redetermination because chapter 42B does not provide for a date for when the opinion of the facility head must be provided before the trial court can hold a hearing on redetermination. *See* art. 46B.113(d), (e).

Over eight months passed since the facility's competency evaluation and the submission of the redetermination motion by the State. With a defendant whose mental state is vacillating between competence and incompetence, use of a stale opinion to shift the burden of persuasion seems to be a dubious proposition. Nonetheless, without deciding the issue, the State proved Appellant's competency by a preponderance of the evidence. At the hearing on the State's motion for redetermination, the only evidence admitted was the testimony of Dr. Mitchell and Appellant's medical records from the facility. Dr. Mitchell opined Appellant had regained competency to stand trial, and the medical records did not contradict Mitchell's opinion. Without any other evidence for the trial court to consider, the State proved Appellant's competency under a preponderance standard. Therefore, even if the trial court erred in shifting the burden of persuasion, the error was harmless and did not affect the outcome of the hearing. TEX. R. APP. P. 44.2.

10

Appellant's third issue is overruled.

**ISSUE FOUR—MOTION TO SUPPRESS**

The fourth issue raised by Appellant is the trial court erred by denying his motion to suppress his confession. During his interrogation after his arrest, detectives read *Miranda* warnings and Appellant responded he understood his rights and appears to have voluntarily spoken with them. Towards the end of the interrogation, however, the detectives asked whether Appellant had any disabilities. He responded he is deaf and suffered from memory loss due to a childhood car accident. The interviewing detective admitted she was not comfortable in continuing and terminated the interview. Appellant now argues the totality of the circumstances, including his subsequent incompetency to stand trial, demonstrate he was without the requisite capacity to voluntarily give his interview with the police.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Deleon v. State*, No. 07-23-00184-CR, 2024 Tex. App. LEXIS 113, at *4–5 (Tex. App.—Amarillo Jan. 8, 2024, no pet.) (mem. op., not designated for publication) (citing *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011)). We apply a bifurcated standard of review, affording almost total deference to a trial judge's determination of historical facts and reviewing the trial court's application of law to the facts de novo. *Id.* (citing *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016)). No statement of the accused made as a result of custodial interrogation shall be admissible against an accused in a criminal proceeding unless he is first advised of his relevant constitutional rights and knowingly, intelligently, and voluntarily waives those rights. *Munoz v. State*, No. 07-23-00088-CR, 2024 Tex. App. LEXIS 1911, at *3–4 (Tex. App.—Amarillo Mar. 14,

11

2024, pet. filed) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. ANN. art. 38.22; *Miranda v. Ariz.*, 384 U.S. 436, 498–99 (1966)).  However, "[a] confession may be involuntary under the Due Process Clause only when there is police overreaching."  *Id.* (citing *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008)).  If there is no police coercion or overreaching, there is no due-process violation. *Id.*  The same is true for *Miranda* rights and the waivers that apply to statements that result from custodial interrogations.  *Id.*  Thus, the United States Constitution leaves voluntariness claims based on the state of mind of the defendant to state laws governing the admission of evidence, such as article 38.22 in Texas.  *Id.*

The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights.  *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) (citations omitted).  The State must prove waiver by a preponderance of the evidence.  *Id.*  Statements of an accused if made freely and voluntarily without compulsion or persuasion may be used against him*.  Chappell v. State*, Nos. 07-17-00151-CR, 07-17-00299-CR, 2018 Tex. App. LEXIS 882, at *1 (Tex. App.—Amarillo Jan. 31, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007)).  We examine the totality of the circumstances to determine whether the statements made are without compulsion or persuasion.  *Id.* (citing *Delao v. State*, 235 S.W.3d at 239; *Hernandez v. State*, 421 S.W.3d 712, 717 (Tex. App.—Amarillo 2014, pet. ref'd)).  And, the totality of the circumstances includes both the characteristics of the speaker and the details of the interrogation.  *Id.* (citing *Hernandez*, 421 S.W.3d at 717).

Appellant's interrogation was recorded on video. The video shows, before questioning began, the interviewing detective informed Appellant he was arrested and served with a warrant for aggravated sexual assault of a child. The detective then admonished Appellant of his *Miranda* rights and warnings. At the end of the admonishment, the detective asked Appellant, "Do you knowingly, intelligently, and voluntarily waive these rights and wish to speak to me?" Appellant responded "Okay." The detective asked Appellant to answer "yes" or "no" and asked again, "Do you wish to speak to me about this?" He answered, "Yes I will speak to you." The detective asked, "But do you understand your rights?" Appellant responded, "Yes, ma'am." The detectives questioned Appellant over the following nineteen minutes beginning with the question, "Do you know what this is about?"

Appellant spoke without much prompting from the detectives during the interview, although at times he displayed a problem with his hearing. Appellant denied assaulting his daughter. He explained he was naked at the time because he claimed his daughter woke him up and said she saw someone outside, and he ran outside without putting on his clothes to check for intruders. He admitted to texting his spouse and telling her he molested his daughter, but explained he texted her "to take the bullet for it" and "to get it over with." Toward the end of the interview, the interviewing detective asked Appellant if he had any disabilities, to which he responded he was deaf—requiring hearing aids—and had memory issues due to a childhood car accident. Upon learning of his disabilities, the interviewing detective expressed she was uncomfortable continuing and terminated the interview.

Appellant does not complain the detectives failed to inform him of his rights or coerced him to speak. Rather, Appellant complains of constitutional and statutory violations of his *Miranda* rights based on his own lack of comprehension of his rights. However, because there is no evidence or allegation of coercion, we find no constitutional due process violation, and we decline his invitation to engage in constitutional error analysis. TEX. R. APP. P. 44.2(a); *supra*. Therefore, we only examine whether his statutory rights were violated. Art. 38.22.

Appellant was subsequently determined to be incompetent to stand trial following his interrogation. Appellant would have us impute this subsequent finding upon his interview with the police to demonstrate he did not have the requisite competence to "intelligently" and "voluntarily" waive his *Miranda* rights. *Id.* at § 2. Although he admitted to having some disabilities and the interviewing detective herself terminated the interview because she sensed Appellant was potentially unable to understand the interview, there were no appreciable signs of impairment during the interview itself. Nonetheless, the subsequent finding of his incompetence to stand trial raises a question about his competence during the interview.

Assuming arguendo Appellant was unable to voluntarily waive his *Miranda* rights at the time of the interrogation, the admission of the video must be disregarded unless it affected a substantial right. TEX. R. APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). If "the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." *Id.* In

14

making this determination, the following nonexclusive factors are considered: the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence indicating guilt; whether the State emphasized the complained-of error; the trial court's instructions; the theory of the case; and, relevant voir dire. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023) (citing *Motilla v. State*, 78 S.W.3d 352, 356–58 (Tex. Crim. App. 2002); *Schutz v. State*, 63 S.W.3d 442, 444–45 (Tex. Crim. App. 2001)).

The facts recited by Appellant during his interrogation were corroborated by other evidence presented at trial, including:

- a text message from Appellant to the mother stating, "Forgive [sic] for raping my daughter I'm sorry [E]von the devil told me do it I need God if not I'm taking my life away";

- text messages from mother to her ex-boyfriend corroborating Appellant was found by mother naked with their daughter;

- testimony from mother corroborating—

  ➢ Appellant was naked with their daughter;

  ➢ Appellant's explanation that their daughter woke him up claiming there was someone outside, so he ran outside naked to check for intruders;

  ➢ their daughter pointed to their car and said "Daddy, daddy touched my butt"; and

- bodycam footage from the police officers responding to a 911 call from mother regarding the assault.

During his interview with detectives, Appellant did not deny any of the above facts. The only thing his video added was his rueful explanation for his actions. Even if the video

15

had not been introduced, the jury received substantial evidence of the statements made by Appellant.

With the corroboration of Appellant's statements through several other pieces of evidence, the interrogation video did not influence the jury or had a very slight effect. The admission of the interrogation video did not affect a substantial right of Appellant. Accordingly, we do not find the trial court abused its discretion. Issue four is overruled.

### ISSUE FIVE—FAILURE TO EXCLUDE PREJUDICIAL EVIDENCE

Appellant's fifth issue complains the trial court erred in admitting evidence which was not relevant and its probative value was substantially outweighed by its danger of unfair prejudice. TEX. R. EVID. 401, 403. The particular evidence Appellant complains of is:

- his daughter's sippy cups;

- photos of his daughter; and

- a portion of the testimony of the forensic interviewer stating she had to reschedule her interview with his daughter due to her emotional state.

The trial court's decisions to admit or exclude evidence are reviewed under an abuse of discretion standard. *See supra*; *Ballard*, 2017 Tex. App. LEXIS 11719, at *6.

Appellant complains the sippy cups should not have been admitted into evidence because they bore no relevance to the case. The sippy cups were never tested for any biological material and did not provide any probative information regarding the charged offense. On appeal, Appellant also points out the cups were never really discussed by

16

witnesses at trial, except for statements the mother apparently saw her daughter holding a sippy cup in the hallway with Appellant on the night in question.[6] But, even if the daughter was not holding a sippy cup at the time her mother saw her with Appellant, the salient portion of the testimony is Appellant was found naked with her. We agree with Appellant, the sippy cups are not relevant as they do not make the commission of the charged offense by Appellant more or less probable.

Appellant also complains of two photographs entered into evidence which depicted his daughter at her forensic interview at two separate times. The first photograph shows her crying, while the second photo shows her with a calmer demeanor. This coincides with his complaint about the admission of the CAC forensic interviewer's testimony, in which she authenticated the pictures and testified the daughter was too emotional when initially interviewed causing her to reschedule the interview to the following day. The CAC interviewer, although she testified about the methods used in conducting forensic interviews and the level of response the victim was able to provide, did not testify as to her analysis of any responses provided during the interview. There was also a video of the interview, which was not admitted into evidence. Appellant complains this evidence should have been excluded because it was prejudicial.

Like the sippy cups, the photographs and CAC interviewer's testimony regarding the victim's demeanor, without something more to tie them to Appellant's commission of

---

[6] The State admitted at trial it could not determine which sippy cup was the one the daughter held in her hand, and it collected both in its initial collection of evidence from the victim's home.

the offense, are not relevant and should have been excluded.[7]  However, we do not find the photographs to be unfairly prejudicial.  Appellant argues the evidence created an impression with the jury his daughter was crying because of something he did.  But the photographs themselves do not point to Appellant as the perpetrator of a crime, and neither does the fact the CAC interviewer rescheduled the victim's interview.  Evidence of the victim's demeanor at the CAC was not enough to "impress the jury in an irrational way."

Even assuming arguendo the sippy cups, pictures, and testimony were all prejudicial and should have been excluded, we must determine if their admission affected a substantial right of Appellant.  TEX. R. APP. P. 44.2(b); *Thomas*, 505 S.W.3d at 926, *supra*.  The introduction of the sippy cups and the photographs were three pieces of evidence out of 154 introduced by the State during its case-in-chief.  The other evidence introduced at trial was much more emotionally charged, including:

- video from the police;

- testimony of the victim's mother;

- graphic pictures of the injuries sustained by the victim; and

- text messages in which Appellant confessed to "raping my daughter[.]"

When examined in the context of all the other evidence presented by the prosecution, two sippy cups, two photographs, and the forensic interviewer's testimony about the child

---

[7] The State attempted to ask the interviewer about statements made by the victim, which would have been relevant if she identified who assaulted her, but Appellant objected on the basis of hearsay, which was sustained by the trial court.

victim being unable to conduct an initial interview were harmless and did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Id.* We find no reversible error in the admission of the complained-of evidence. Appellant's fifth issue is overruled.

## ISSUE SIX—FAILURE TO EXCLUDE OUTCRY EVIDENCE

For his sixth issue, Appellant complains the trial court erred in permitting a sexual assault nurse examiner ("SANE") to repeat the outcry of his daughter during her exam. Appellant argues the trial court erred in permitting the SANE who attended to the victim to read from her patient file the outcry reported to her by the mother, when the same testimony from the mother was excluded.

While the mother was testifying, Appellant objected to any outcry testimony as hearsay, arguing it did not meet the exception to hearsay under article 38.072. TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(a), (b). The State did not call the victim as a witness and did not otherwise make her available to testify, and the trial court determined the requirements of article 38.072 were not met. Art. 38.072 § 2(b)(3). However, the trial court overruled Appellant's hearsay objection based upon article 38.072 when the SANE began reading her patient history, which included a recitation of the alleged outcry the victim made to her mother. Appellant's trial counsel urged the SANE should not be permitted to recite the same hearsay the mother was prohibited from testifying about. Art. 38.072 § 2(b)(3). The trial court surmised the hearsay statement fell within the exception created by Rule 803(4), because the history was being taken for the purposes of providing "medical diagnosis or treatment." TEX. R. EVID. 803(4)(A).

19

The State preliminarily argues Appellant did not sufficiently preserve his objection to the SANE's testimony by failing to object specifically on the basis of "hearsay within hearsay." TEX. R. EVID. 805. It proposes "a general hearsay objection does not preserve a double-hearsay issue" and cites the following cases for this proposition: *Juarez v. State*, 461 S.W.3d 283, 294 n. 8 (Tex. App.—Texarkana 2015, no pet.); *Freeman v. State*, 230 S.W.3d 392, 403 (Tex. App.—Eastland 2007, pet. ref'd); *Ricketts v. State*, 89 S.W.3d 312, 319 n. 1 (Tex. App.—Fort Worth 2002, pet. ref'd); *Serrato v. State*, Nos. 05-18-01071-CR, 05-18-01462-CR, 2019 Tex. App. LEXIS 6180, at *2 (Tex. App.—Dallas July 18, 2019, no pet.) (mem. op., not designated for publication); *Richard v. State*, No. 06-11-00240-CR, 2012 Tex. App. LEXIS 5872, at *3 (Tex. App.—Texarkana July 20, 2012, no pet.) (mem. op., not designated for publication); and *Luster v. State*, Nos. 05-13-01342-CR, 05-13-01343-CR, 2014 Tex. App. LEXIS 12855, at *4 (Tex. App.—Dallas Dec. 1, 2014, no pet.) (mem. op., not designated for publication). With the exception of *Luster*, all of these cases cite *Ricketts* for the proposition, which mentions the "rule" in a footnote which refers to the general preservation of error rules. *Ricketts*, 89 S.W.3d at 319 n. 1. Each of these cases is also distinguishable by our respective sister courts' application of an exception to the hearsay rule, making the comments regarding the "rule" only dicta. *Luster* does not mention *Ricketts* or the double-hearsay "rule," and does not stand for the State's proposition.[8] The authority for a double-hearsay objection "rule" appears tenuous at best.

---

[8] In *Luster*, our sister court declined to entertain a complaint regarding hearsay within a statement because the appellant only objected to the statement itself being hearsay at trial. *Luster*, 2014 Tex. App. LEXIS 12855, at *8–9.

20

There is also no "double-hearsay" objection under the rules of evidence. Rule 805 only provides a standard upon which hearsay statements may be admissible, but it is not a basis for objection which a party must specifically assert. TEX. R. EVID. 805. Rather, the rules of evidence only require the objecting party to "[state] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A).[9] It is clear from the trial transcript the trial court understood the objection was specifically to the recitation of the victim's outcry by the mother contained within the nurse examiner's report. Under these circumstances, considering the context of the objection, Appellant adequately preserved his hearsay objection for appeal.

Nonetheless, we must resolve this issue against Appellant. As he concedes, our stare decisis qualifies a SANE's exam as "medical diagnosis and treatment" and is an exception to inadmissible hearsay under Rule 803(4). *Sharp v. State*, 210 S.W.3d 835, 839 (Tex. App.—Amarillo 2006, no pet.); *Prieto v. State*, 337 S.W.3d 918, 920–21 (Tex. App.—Amarillo 2011, pet. ref'd). For statements to be admissible under Rule 803(4), the proponent of the evidence must show that (1) the declarant was aware that the statements were made for the purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended on the veracity of the statement and (2) the particular statement offered is also "pertinent to treatment," that is, it was reasonable for the health care provider to rely on the particular information in treating the declarant. *Prieto*, 337 S.W.3d

---

[9] Cf. *Whitaker v. State*, 286 S.W.3d 355, 368–69 (Tex. Crim. App. 2009) (when evidence is composed of a mix of hearsay and non-hearsay, the objecting party must specifically point out the statements which are inadmissible hearsay in order to preserve error).

at 921 (citing *Taylor v. State*, 268 S.W.3d 571, 589, 591 (Tex. Crim. App. 2008); *Mbugua v. State*, 312 S.W.3d 657, 670–71 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)).  A victim's outcry to a SANE qualifies under the Rule 803(4) exception to hearsay.  *Sharp*, 210 S.W.3d at 839; *Prieto*, 337 S.W.3d at 920–21.  In this case, however, we have the added hearsay layer of the mother recounting to the SANE her daughter's outcry.  Where the parent gives the information relayed to her by her child to assist in the diagnosis and treatment of the child, the parent's hearsay statements are excepted under Rule 803(4).  *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *accord*, *Taylor v. State*, 268 S.W.3d 571, 587 n.88 (Tex. Crim. App. 2008).  The purpose of the SANE's exam was to provide medical care related to injuries possibly sustained from a sexual assault, and therefore, the mother's report of the outcry to the nurse examiner arguably fell within the Rule 803(4) exception.[10]

Even assuming, arguendo, the trial court improperly permitted the mother's hearsay of the victim's outcry through the SANE, we must perform a harm analysis.  TEX. R. APP. P. 44.2(b); *Thomas*, 505 S.W.3d at 926, *supra*.  The outcry was the only direct evidence of the alleged sexual assault.  However, the jury may make reasonable

---

[10] We should note, however, the issue is not quite so clear, as the Texas Court of Criminal Appeals has cautioned:

> Certainly parents who convey information to a doctor for purposes of treating their child will have a compelling (albeit not wholly selfish) motive to tell the truth.  To the extent they have first-hand knowledge of, e.g., the child's medical history, there is no reason their out-of-court statements should not be admissible under the rule.  On the other hand, if they are only relating, e.g., the cause of an injury as they themselves have been told by the child, it is arguable that the hearsay exception should not apply.  For while there is no reason to question the truth-telling motive of the parents, the child's statement to the parents may not have been made with the intention (or even an awareness) that it would be passed on to a medical professional for purposes of diagnosis or treatment.  Under those circumstances, the initial declarant of the hearsay-within-hearsay statement may not have shared the selfish motive essential to guarantee its trustworthiness.

*Taylor v. State*, 268 S.W.3d 571, 587 n.88 (Tex. Crim. App. 2008).

inferences from circumstantial evidence. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). Even in the absence of the outcry, several pieces of evidence were introduced at trial from which the jury could have reasonably inferred Appellant committed the offense beyond a reasonable doubt, including:

- Appellant was found standing naked next to his daughter in the middle of the night;

- the daughter told her mother she was in the mother's truck with Appellant and "daddy touched my butt";

- Appellant texted the mother for forgiveness and admitted "raping my daughter" and "I did her in her booty"; and

- the SANE's examination revealed an injury to the daughter's anus;

The jury had sufficient evidence before it to reasonably infer Appellant committed the offense against his daughter, and the admission of the outcry through the SANE witness's testimony was harmless and did not affect a substantial right of Appellant.

Accordingly, we overrule Appellant's sixth issue.

#### CONCLUSION

The judgment is affirmed.


Alex Yarbrough
Justice


Do not publish.

Quinn, C.J., concurs in the result.

23